[Crim. No. 2051. Second Appellate District, Division One.—October 3, 1931.]

THE PEOPLE, Respondent, v. JACOB BERMAN, Appellant.

William B. Beirne and Rush & Bierne for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

YORK, J.—This is an appeal from an order denying motion for a new trial and from judgments of conviction on counts III, IV and V of grand jury indictment which contained five counts. Trial was had before the judge sitting without a jury. After 322 pages of the "brief" of the appellant, the most strongly emphasized points argued by appellant appear in the "conclusion" thereof, starting at

page 323. In this conclusion, such phrases are used as: "... are saturated with errors of law too gross even for the saving and redeeming power of section 4½ of article VI itself. ... No candid and impartial mind can scan the testimony ... without an uneasy and restless sense of the legal insufficiency of such evasive and equivocal testimony to support a judgment of conviction. ... No candid and impartial mind can scan the testimony ... upon which appellant was convicted on counts IV and V of the indictment without embracing the conclusion ...

"A total abdication of candor and impartiality is required to distort acts of the appellant, mentioned in counts IV and V of the indictment, into a scheme or plan to defraud the very corporation ... No candid and impartial mind, reviewing the course of this proceeding from the finding of the indictment to the passing of judgment upon the appellant, can escape the disturbing and unpleasant impression, that the accused was tried, convicted and sentenced because of *who he was,* and not because of *what he had done under the charges against him.* ...

"The trial judge, in violation of express law, neglected and failed to make a frank disclosure of the bias and prejudice so clearly manifested by the exhibition of gross partisanship ...

"Contemplating the flood of error that streams through this record from both the prosecution and the trier of the accused, we cannot bring ourselves to suppose that a judgment of conviction grounded thereon will be permitted to stand unredressed in this court."

This last clause could be taken by this court as a confession of the weakness of all the points urged in appellant's brief —at least to include in a brief any such language usually means that the attorneys presenting the brief have no confidence in any argument contained therein. Such language could only be intended to prejudice this court improperly in passing upon this appeal. The intemperate language used in such conclusion has compelled more than the usual examination of the record—that is, an examination of *other* parts of the record than those discussed in the brief, because the quotations from the evidence contained in appellant's brief hardly bear out the intemperate language herein quoted by us therefrom.

After such examination of the record in this case, we are of the opinion that there are but two questions of law raised in this voluminous brief that really merit any discussion by this court: Point one: That section 170 of the Code of Civil Procedure, as amended in 1927 (Stats. 1927, p. 1403), made it necessary for the trial court, within five days after presentation and filing of the affidavit by which the appellant attempted to charge bias and prejudice, to file his consent in writing with the clerk that the action or proceeding be tried before another judge, or to file with the clerk his written answer admitting or denying any or all of the allegations contained in the statement filed herein, and that he should set forth any additional fact or facts material or relevant to the question of his disqualification.

It appears from the argument of appellant that his construction of this section is that he could file the affidavit after the issues of fact had been fully tried, even after a judgment had been rendered by the court, and after an extension of time had been granted within which to make a motion for a new trial. When this time had been extended to within two or three days of the time within which sentence would have to be pronounced or a new trial automatically awarded defendant only because it had *not been so pronounced, then* and *not until* then did appellant file his affidavit, which affidavit itself showed that he was relying upon facts which were within his knowledge during the course of the trial, and long before his motion for a new trial was made. It does not appear from said affidavit whether or not the feeling objected to was caused by the evidence introduced in such trial. If his contention is right as to the construction of the section regarding the disqualification of judges, and if his affidavit was sufficient, it would have actually precluded the sentencing of defendant under the judgment of conviction within the time required by law, automatically resulting in a new trial being granted, whether or not a new trial should have been granted in accordance with his notice of motion for a new trial. However, as we read this section, it does not so provide. It might be, in a case where a sworn statement objecting to the hearing of such matter, or to the trial of any issue of fact or law in such action or proceeding before such judge, and setting forth a fact or facts constituting a ground or grounds of disqualification of such

judge, had been filed, as provided by section 170 of the Code of Civil Procedure, with reference to matters that were only learned by the defendant immediately prior to the pronouncement of judgment. But this is a question which we do *not* have before us, and we do not have to decide it if such affidavit *must* be filed before evidence is introduced.

In the instant case, the statement filed does not contain any *statement of facts,* showing disqualification of the trial judge, although the language used by the trial judge in the case of *People* v. *Johnson and Lavine,* when those defendants were before the court for sentence, during the time that the instant case was on trial, was probably unnecessary, and such comments might be construed by some people to be a reflection upon anyone connected with the Julian case. Yet there is nothing in this affidavit attempting to charge bias of the trial court, which in any way shows a disqualification of the judge to proceed to hear the motion in this case, or which could be twisted into a statement that he in any way believed, at the time referred to, that defendant was guilty as charged in the information. In fact, no point was made of it by the appellant until long after the court had granted extensions of time for the hearing of his motion for a new trial to such a period of time, when defendant's attorneys must have known that to file the same, if it were in compliance with section 170 of the Code of Civil Procedure, as *construed by them,* would of necessity cause a new trial to be granted by reason *only* of the fact that the trial court would thereby be without power to impose sentence within the time required by law.

At the time of the ruling in the case of *Keating* v. *Keating,* 169 Cal. 754 [147 Pac. 974], section 170 of the Code of Civil Procedure was in an entirely different form than it is to-day. It is true, of course, that almost all defendants, after they have been found guilty by a judge sitting without a jury in criminal matters, consider that the trial judge is prejudiced against them by reason of such verdict. The section as it now reads is evidently worded to avoid the difficulty that would be experienced under the new statute if it had been worded so that the affidavit could be filed after evidence had been introduced or after the decision of the court. That is evidently the reason for the insertion of the provision in the new section 170: ''The statement of a party

objecting to the judge on the ground of his disqualification shall be presented at the *earliest practicable opportunity, after his appearance and discovery* of the facts constituting the ground of the judge's disqualification, and in any event *before* the commencement of the hearing of *any* issue of fact in the action or proceeding before such judge.'' (Italics ours.)

In the given case, it is not clear whether the trial judge struck out the so-called affidavit of prejudice because it was filed too late, or because it did not contain any *statement of fact* that would make it ''appear probable that by reason of bias or prejudice of such . . . judge . . . a fair and impartial trial cannot be had before him''. The statement as to the reference by the trial judge to the grand jury of the matters brought out in evidence before the trial judge could not in any way show any prejudice against defendant. The quoted statement made by the trial judge in sentencing the defendants Johnson and Lavine in another case does not on its face show any prejudice on the part of the trial judge against the defendant here. The conclusion in the affidavit presented, that the trial court was prejudiced, was based and limited by such affidavit itself solely and only on the facts alleged in the affidavit; which facts, weighed in any light which is proper, could not be considered as showing any prejudice on the part of the trial court against this defendant. This being so, point one is not well taken.

The foregoing disposes, to our minds, of the questions raised under points 1, 2, 3 and 4.

Another point which we are asked to consider is the construction placed upon section 470 of the Penal Code. The construction placed by appellant upon this section is apparently that the first twenty-eight words of said section, to wit: ''Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, knowing that he has no authority so to do, to . . . is guilty of forgery,''—cannot be construed as we have just quoted it with the last four words only added, but that for some reason it must be construed *in toto* with words that have no bearing on the instant charge. It is not necessary that the whole of said section be violated by a person to make him guilty of a crime denounced therein, because other than the portions quoted by appellant there is in such section also a proviso

that—"Every person who . . . counterfeits or forges . . . or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged or counterfeited, with intent to prejudice, damage or defraud any person; or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence . . . is guilty of forgery." Thus is appears that the acts charged against appellant and the proof adduced at the trial of the cause would clearly show violations of the portions of section 470 of the Penal Code, which we have quoted in this opinion.

We do not think the "saving and redeeming power" of section $4\frac{1}{2}$ of article VI of the Constitution is necessary to be invoked in this case in order to sustain a judgment of conviction. As we find no errors in the rulings of the trial court, and since there was sufficient evidence to justify the verdict, the judgments of conviction on counts III, IV and V are affirmed, and the order appealed from is affirmed.

CONREY, P. J., Concurring.—I concur in the judgment. I do not concur entirely in the criticisms of appellant's brief, although it is too perfervid in its eloquence. While we may find that the positions taken by appellant are not sound, nevertheless, his propositions are clearly stated, together with abundant citations of authority which appellant thinks are in support of his position.

The verified statement by which appellant sought to disqualify the trial judge from further proceeding in the case is found in the clerk's transcript, beginning at page 103. It was filed on the eighth day of August, 1930, only two days before the time when, in the regular course of procedure, the power of the court to pronounce sentence would have expired. When the time has thus expired without the imposing of sentence the defendant becomes entitled to a new trial, if he so demands. (Pen. Code, secs. 1191 and 1202.) It is argued by the attorney-general that section 170 of the Code of Civil Procedure could not have been intended to apply in favor of a party who has delayed his attempt to disqualify the judge to so late a date as was done in this case, and that if the defendant and appellant is sustained

in his contention here, it would result that the defendant in a criminal case has it in his power to secure new trials *ad infinitum*. The appellant responds that under such circumstances the pendency of the proceeding for disqualification of the judge should be held to have suspended the requirements of the statute as to the passing of sentence, until the matter of such disqualification has been determined. As authority for the principle involved he refers to *People* v. *Lauman*, 59 Cal. App. 144 [210 Pac. 421]. However this may be, I am of opinion that appellant was too late in taking steps to establish the disqualification of the judge on the grounds of bias and prejudice. It is provided in section 170 of the Code of Civil Procedure (Stats. 1929, p. 958), as a limitation of the right of a party to institute a proceeding of this kind that "the statement of a party objecting to the judge, on the ground of disqualification, shall be presented at the earliest practicable opportunity, after his appearance and discovery of the facts constituting the ground of the judge's disqualification, and in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such judge". Here it appears that all of the facts upon which defendant relied to establish the disqualification of the judge were known to him at least as early as the twenty-fifth day of July. No good reason appears why such charge of disqualifying bias and prejudice on the part of the judge should not have been made promptly at that time. Further I am satisfied that when a proceeding for disqualification of a judge is not instituted within the time permitted by the statute it is appropriate for the court to order that the disqualifying statement be stricken from the files. This is an appropriate method of signifying on the record the fact that no disqualifying proceeding is legally pending, and that the judge, notwithstanding the filing of such proceedings, will proceed to exercise his authority in the case.

 On point 5. I do not think that the court erred in allowing the prosecution to reopen the case to introduce additional evidence as was done. On point 6. I do not think that the court erred in receiving in evidence testimony offered for the purpose of proving other separate and distinct offenses not charged in the indictment, in order to show

defendant's intent to defraud, and his plan to do so. (*People* v. *Whalen*, 154 Cal. 472, 476 [98 Pac. 194].)

Point 7 presents a more serious and a more doubtful question. Appellant contends that the court erred in overruling his objections to the testimony of certain witnesses with reference to the purported overissue of the stock of the Julian Petroleum Corporation, and in denying appellant's motion to strike said testimony. (See appellant's opening brief, p. 183 et seq.) This evidence had relation to the question of overissuance of stock, that is to say, the question whether at a particular time there was or had been an issue of stock of the corporation in excess of the 600,000 shares authorized by the corporation commissioner. The court found that it was not reasonably practicable to present the original detailed evidence as the same might be found in the records of the corporation. These were so voluminous and involved so many details that the only practical method was to present the result of investigations made by witnesses. For that purpose these persons having qualified themselves as accountants and auditors of account books, were allowed to testify. Of the propriety of such procedure I have no doubt. But in such case the expert ordinarily will have prepared himself by an examination of the original record. In the instant case in some instances the testimony was not based directly upon original records, and so did not to the fullest extent comply with the rule. But a reading of the entire testimony of these witnesses on the subject in question is very convincing to the fact that the stock books, ledgers, etc., of the Julian Petroleum Company had passed into the hands of a receiver, and that the testimony of these witnesses was based upon an examination of those documents as found in the possession of the receiver. With due regard to the right of the defendant to be confronted by the witnesses against him, the practical necessities of the administration of justice require that in relation to complicated transactions involving the use of numerous and extensive documents, the results of examinations made out of court should be allowed to be received as evidence in such a case. So long as this is done without infringement upon the substantial rights of the defendant, no complaint of such procedure should be made. Another and further reply to this point of appellant is that his own deposition as read

in evidence shows that, at the period of time in question in this case, he was well aware of the fact that a large overissue of stock of the corporation had been accomplished and that he himself had been dealing in such overissued stock. This being so, he could not be seriously prejudiced by an error of the character of that of which he now complains.

Point 8 of appellant's brief is that counts IV and V of the indictment on which he was convicted do not, nor does either of them, state facts sufficient to constitute a public offense under section 470 of the Penal Code. In count IV of the indictment the defendant was accused of "the crime of forgery of fictitious name on endorsement", a felony, committed as follows, to wit: That the defendant did wilfully, unlawfully, feloniously, falsely and fraudulently, and with intent then and there to cheat and defraud the Julian Petroleum Corporation and others to the grand jury unknown, make and forge the fictitious name of F. C. Waters to and upon the back of a certain certificate of stock of the Julian Petroleum Corporation, which said certificate of stock was in the words and figures as follows, to wit: Here follows a copy of the certificate of ownership of 100 shares of the stock of one F. C. Waters "transferable only upon the books of said corporation by the holder hereof in person or by duly authorized attorney upon the surrender of this certificate properly endorsed". On the back of the certificate was indorsed a form of transfer in blank to which was signed the name F. C. Waters. It was further charged that the defendant, well knowing that the fictitious name of Waters was so falsely made and forged to and upon the back of the said certificate of stock, did, then and there, wilfully, unlawfully, fraudulently, falsely and feloniously pass, utter and publish the fictitious name of the said F. C. Waters, so falsely made and forged to and upon the back of the said certificate of stock as aforesaid, and the said certificate of stock with the fictitious name of F. C. Waters so falsely made and forged to and upon the back thereof as true and genuine, with intent, etc. Count V is the same as count IV, except that it refers to another certificate of stock and another fictitious name. On page 165 of the appellant's brief he prints such parts of section 470 of the Penal Code as he considers pertinent here, as follows: "Every person who, with intent to defraud, signs the name of another per-

son, or of a fictitious person, knowing that he has no authority so to do, to . . . any certificate of any share, right, or interest in the stock of any corporation . . . or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage or defraud any person . . . is guilty of forgery.'' The contention of appellant that these two counts do not, nor does either of them, state a public offense is amplified in the further propositions: (1), that there is no such specific offense known to the law of California as forgery of fictitious name on indorsement of a certificate of stock as set out in said count; and, (2), that if, nevertheless, this court should be of opinion that the above-quoted section 470 of the Penal Code denounces forgery of fictitious name on indorsement of the certificate of stock as a specific offense then, and in that case, said offense is not alleged in the said counts according to law. An examination of the section will show that in addition to its enumeration of ''any certificate of any share . . . in the stock of any corporation'', the section also includes the words ''any transfer or assurance of money, certificates of shares of stock'', etc. Reading the words of the indictment, including the copies of the certificates of stock and of the blank certificates of transfer on the back of the certificates of stock, and considering with said language of the indictment the terms of the statute, it appears that the defendant must have understood that by the indictment he was charged with having forged the stated fictitious name to a blank certificate of transfer of the share of stock described in count IV, and likewise the similar blank certificate of transfer in count V. It is of course true, as counsel for appellant states, that a certificate of stock is not a negotiable instrument and that there is no such thing as an *indorsement* of a certificate of stock in the sense of the Negotiable Instruments Law. But there are instances where the word indorsement is commonly used to express the meaning of a transaction which is not an indorsement of a negotiable instrument. This is illustrated in the instant case, where the certificate of stock itself provided for transfer of the shares ''upon the surrender of this certificate properly indorsed''.

HOUSER, J., Dissenting.—I dissent. Not that I am unable to agree with each of my respected associates in many of the different and most substantial factors which constitute the reasons for the conclusion reached by each of them respectively, but that in a few of the more important questions submitted by appellant to this court do I find myself unable to concur with the views expressed in either of the opinions hereinbefore set forth and upon which the affirmance of the judgment and the denial of the motion for a new trial must rest.

At the outset, in connection with the animadversions cast by one of my associates upon the brief presented in behalf of appellant, although fully recognizing the fact that in some respects the language to which objection is made, as addressed either to an appellate court or to any other tribunal, is of a character not deserving commendation, nevertheless, in my opinion, it should be viewed more from the standpoint of an earnest and zealous advocate at the bar, rather than from the more placid and seclusive situation of a jurist in chambers with nothing before him other than the "cold record" and the "dusty tomes of the law". In any event, the fault or dereliction of the attorney and counselor in that regard should bear no weight in the scales of justice so far as a determination of the legal rights of the appellant is concerned; and I am more than convinced that in reaching his conclusion on each of the several points urged by appellant herein my learned and respected associate has been able to fully and completely discharge from his mind any thought of what he may have considered unethical conduct on the part of the attorney in the case.

The first obstacle to a concurrence by me in the opinion of either of my associates arises from the situation presented by the specification of error suggested by appellant to the effect that his substantial rights were prejudicially affected by the fact that, preceding the hearing of his motion for a new trial, the trial judge ordered stricken from the record appellant's verified statement by which the bias and prejudice of said judge was made to appear. My understanding of the basis for the conclusion reached in each of the prevailing opinions herein is that in the premises, in the exercise of a sound discretion, the trial judge was justified in his action in the particular of which complaint is here

made, for the reasons that such verified statement was filed too late; and (at least according to the opinion of one of my associates) that had said verified statement not been stricken from the files, by the provisions of sections 1191 and 1202 of the Penal Code the compulsory result would have been that, irrespective of the contents of the verified statement and its consequent merit or lack thereof, a new trial to the defendant would have eventuated. On examination of that part of the provisions of section 170 of the Code of Civil Procedure which relates to the time within which may be filed the verified statement of the party to an action who may seek to establish the disqualification of the judge before whom such action or proceeding is set for hearing, it will be noted that the statutory requirement is that such statement "shall be presented at the earliest practicable opportunity, after . . . discovery of the facts constituting the ground of the judge's disqualification . . . "

Since it appears that the facts were discovered by appellant or his then counsel not later than the twenty-fifth day of July and that the verified statement was not filed until August 8th following (a period of two weeks), the first question to be considered is whether there was a sufficient compliance with the legal requirement that such statement be presented *"at the earliest practicable opportunity"*. As disclosed by the record herein, the facts which tended to establish the diligence of defendant in the premises are contained within his verified statement thereof as follows:

"Defendant avers that owing to his insolvency, he was compelled to request the services of the public defender of Los Angeles county in the preparation and presentation of his defense in this action; that said public defender represented him at said trial and during all the proceedings prior and subsequent thereto until after decision had been rendered herein finding defendant guilty as aforesaid; that thereafter said public defender filed herein a motion for a new trial of the action on the 30th day of July, 1930, at which time, and upon the performance of which service, said public defender deeming his professional obligation to this defendant terminated, withdrew from further participation in his defense and has since declined to further represent him herein; that on said 30th day of July the hearing on said motion for a new trial was, by the Honorable B. Rey

Schauer, judge as aforesaid, set for August 8, 1930; that defendant has been put to great trouble and inconvenience in obtaining capable and competent counsel to prepare and present his defense herein, and defendant avers that he has been able to make suitable arrangements with other counsel to represent him herein only within the last 48 hours; that on the 6th day of August, 1930, he definitely effected an arrangement with the law firm of Rush and Beirne, counselors at this bar, to represent him in his further defense herein, and especially to represent him in the matter of said motion for a new trial now pending herein; that immediately upon the engagement of such new and substituted counsel he instructed them to prepare the requisite papers and to take the requisite steps to secure the amotion of said B. Rey Schauer, judge as aforesaid, from further hearing and determining any of the issues of fact or law to be heard and determined in this action, because of the facts hereinbefore shown; that this defendant is confined in the common jail of Los Angeles county and under strict guard of agents and officers of the federal government; that because of such confinement he has been greatly impeded and inconvenienced in consulting with his said counsel and in the preparation of his further defense herein, and his said counsel have been compelled to familiarize themselves with the merits of this action and of defendant's grounds of defense under the difficulties imposed by the confinement of this defendant; that the record made on the trial of this action filled 21 volumes of more than a thousand pages of the transcript; that it was necessary for defendant's counsel to read and study this voluminous record in order to properly prepare and present defendant's further cause of defense herein, and to familiarize themselves with the proceedings therein prior to the filing of the motion for a new trial, by reason whereof defendant has been unable sooner to prepare and present this his statement of objections to the further hearing hereof before the said B. Rey Schauer, judge as aforesaid, and defendant now presents and files same at the earliest practicable opportunity after discovery of the facts shown herein.''

It thus appears that on the same day on which the motion for a new trial herein was filed, the public defender, who theretofore had represented defendant in all prior proceed-

ings in the action "withdrew from further participation" in the defense of defendant, who then was in jail, financially insolvent, and up to a time within 48 hours of the date of the filing of his verified statement, unable to procure the services of suitable counsel to further represent him in court; that the record in the trial of the action consisted of more than 1,000 pages of typewritten transcript, and that in order to properly present the verified statement of defendant in the matter of the proposed disqualification of the trial judge, it was necessary for counsel for defendant to read such record and to familiarize themselves with the proceedings in the action which preceded the filing of the motion for a new trial.

It will be remembered that none of the alleged facts which tended to establish the disqualification of the trial judge came to the knowledge of defendant until after his trial had commenced, at which time it is most likely that defendant believed in his innocence of either of the crimes of which he was charged and hoped for an acquittal thereof. Nor is it beyond the realm of probabilities that, even after defendant's "discovery of the facts", because of fear of the effect upon the result of the trial in which he was engaged, he properly and in the exercise of due caution, hesitated to make the charge of disqualification of the trial judge. Before the decision by the trial court was rendered in the action, manifestly defendant could have had no knowledge that it would be necessary that he make a motion for a new trial; and after the trial was concluded, five days elapsed before his then counsel gave notice of his intention to make such motion;—at which time he abandoned the cause of defendant. Notwithstanding the situation in which defendant thereupon was placed, but one week elapsed before he had secured new counsel to represent him; and it is most apparent that thereafter such counsel acted most expeditiously in the premises. Because of the limitations upon human capacity and endurance, it is almost incredible that within a space of forty-eight hours the voluminous transcript of the testimony and precedent proceedings herein could have been read, digested and mastered, and the verified statement, dependent not only thereon but as well upon other related but wholly independent facts, could have been prepared and presented to the trial court.

Considering the surrounding circumstances, to my mind it is clear that within the meaning and intent of- the language of the statute the verified statement of defendant was *"presented at the earliest practicable opportunity"*.

Although it may be conceded that by no express language contained in section 170 of the Code of Civil Procedure is the judge whose disqualification is at issue forbidden to summarily determine whether such verified statement has been presented "at the earliest practicable opportunity", from a reading of the entire statute it would seem that its spirit and intent is that, upon the filing of such a statement, the recused judge ceases to have authority in the premises.

Nor am I able to perceive the force of the argument in substance that because (as asserted) at the time the verified statement was filed but two days remained before the statutory period within which judgment might be pronounced would expire, and thereupon the defendant would become entitled to a new trial,—it should follow that no error was committed by the trial court in its order by which in effect consideration of the charge against the trial judge was refused. In the statute in question no direct provision may be found which in itself places any limitation upon the time within which the verified statement may be presented. Of course, in the construction of a given statute the provisions of other related statutes may be taken into consideration; but it is plain that where a positive right is conferred by the provision of one statute, such right may not be arbitrarily denied because, forsooth, the provisions of some other statutes in their ultimate effect may create an apparent conflict with the absolute right conferred by the questioned statute. Then, too, since the statute here in question is later in its date of enactment than is either of the other statutes, why would it not be as reasonable to say that its or their provisions was or were held in abeyance, modified, or, if necessary, repealed, rather than that the statute here under consideration should be denied effect?

But in the instant case it is not certain that because the verified statement was filed but two days before the statutory time for pronouncing judgment would expire, necessarily it would follow that the question of the asserted disqualification of the trial judge could not or would not have been determined within the statutory period for pronouncing the judg-

ment. For aught that appears, there was time yet remaining within which every act contemplated by either or all the statutes bearing upon the matter might have been fully, adequately and fairly performed.

However, as is shown in the opinion herein of one of my respected associates, it is urged that the verified statement presented by defendant "does not contain any *statement of facts*";—from which it is inferentially argued that the trial judge was justified in making the order by which the verified statement was stricken from the files of the action.

An examination of the verified statement, as it appears in a space covering twenty-two pages of the clerk's transcript herein, discloses what ordinarily would seem to be many pertinent facts from which it might be possible to deduce the correctness of the charge preferred against the trial judge. Among other facts, the verified statement recites that each of the several offenses for the commission of which defendant was on trial arose out of what has been termed the "Julian mess"; that during the course of the trial of defendant proceedings were halted for the purpose of pronouncing judgment upon two certain other defendants who theretofore had been convicted of a separate and independent offense which purportedly was an "off-shoot" of the main crime; that in so doing the trial judge made remarks as follows:

"Another circumstance makes this case by comparison fade to far less significance than it might otherwise have. That circumstance is the fact that your crime is but an off-shoot of the great Julian crime-orgy. After all, you are but small fry. Before the Julian mess, you probably were, and but for it would be now, honorable, law-abiding citizens. You had seen paraded before your eyes and before the eyes of the whole world, the spectacle of the filching of many millions of dollars from forty thousand persons and those arch thieves going free, coddled, pampered and protected, corrupting and bringing disgrace and penalization as well as pecuniary loss to others, but themselves, apparently immune from any penalty of law. No person has as yet been convicted in any court of any crime for any part of the great robbery itself. A little small change from the millions stolen and some liquor probably purchased with stolen money, plied to benumb the senses of almost a lifetime of service,

ensnared one or two others and they are paying the penalty for their weakness—their weakness? Their lack of moral and intellectual stamina sufficient to cope with the great iniquitous power which conceived and has so far successfully executed the plan of stealing the millions from the forty thousand persons and of avoiding any punishment therefor. The great Julian whirlpool—you people were caught and wrecked by it and now like bits of flotsam are flecked from its edges,—society has been quick to be exacting with you—as it should be—but to its unutterable shame, the vortex of that Julian Charybdis is still intact.''

In the verified statement is then alleged the connection which defendant bore to the Julian Petroleum Corporation; and thereupon affiant attempts to and does therein set forth in great detail how and in what manner the said remarks made by the trial judge as aforesaid reflected upon defendant, and that in their significance such remarks disclose the fact that the said trial judge was biased and prejudiced against defendant.

In another particular does the verified statement contain a specification of alleged facts from which, if found to be true, the prejudice of the trial judge against defendant might have been inferred, to wit, it therefrom appears that in the course of the trial certain exhibits were either permitted to be introduced in evidence, or were marked for identification, which, if substantiated by competent evidence, would have tended to show that defendant was guilty of the commission of crimes other than and additional to those for which he was then on trial; that at said time, ''and while this action was still in process of trial, and after the adjournment of the court for the day, and when this defendant was no longer present in the courtroom, said judge convoked a session of the criminal complaints committee of the grand jury of Los Angeles county in said courtroom, and then and there presented to said committee all of the above-mentioned documents, and recommended to said committee that an investigation be conducted by them of this defendant's connection therewith, and by insinuation and innuendo suggested and recommended to said committee that it was their duty to lodge an indictment against this defendant based upon said certificates aforesaid''.

Following the narration of such incident, the verified statement contains the further alleged facts—

"That at the time of this action on the part of the said trial judge the taking and reception of testimony in the case then on trial had not been completed, and this defendant had not yet been given an opportunity to offer testimony in his own behalf, and the action of said trial judge in seeking to have this defendant indicted by the grand jury upon the incomplete and fragmentary testimony given by witnesses for the prosecution and before this defendant had been given an opportunity to explain said testimony, or countervail or contradict same, evidenced a fixed and irremovable belief and opinion on the part of said trial judge that any testimony given or offered by this defendant in contravention of the testimony of the prosecution witnesses would not be believed by said trial judge but would be disregarded by him, and that it would be idle and useless for defendant to offer testimony on his own behalf as said trial judge had definitely and irrevocably closed and sealed his mind against the reception and judicial consideration thereof; that the said judge thus manifested his fixed opinion and belief that this defendant was guilty of having forged said names on said certificates, and thus further manifested his fixed opinion and belief as to the weight to which such evidence was entitled in the action then pending before him against this defendant, and that said evidence produced in his mind an irremovable conviction of the guilt of this defendant."

For the purpose of reaching a decision herein, if that which has not been denied may be assumed to be true, to wit, each of the foundational facts, together with the conclusion that the trial judge was prejudiced against defendant as set forth in the verified statement, it becomes obvious that, within the meaning and intent of the law, defendant neither had a fair trial on the merits of the action, nor a fair hearing on his motion for a new trial.

Neither am I able to concur with the conclusion expressed by my associates in their respective opinions with reference to "Point 6". Unless I mistake, the question presented by appellant is not as to whether on a charge of forgery, for the purpose of proving intent or system, evidence may be admitted which shows the commission by defendant of other

criminal offenses of like character, but rather relates to a question of whether in the circumstances as disclosed by the evidence in the instant case, the particular evidence received by the trial court and to which defendant objected was admissible against him.

The record herein discloses the situation that one of the alleged offenses for the commission of which defendant was on trial, was that of forgery of the name of T. P. Conroy, as secretary of the Julian Petroleum Corporation, to a certain certificate of stock of said corporation; and that although Mr. Conroy testified on the trial of the action that the signature in question was not his genuine signature, he positively and repeatedly declared that he did not know that either previous to the time when his signature was placed on the certificate he had not authorized defendant to do so or to cause it to be done, or that subsequent to such time he had not ratified the act. Although it appears that in the course of his direct examination as a witness for the People, on one occasion, in response to a repetition of the question as to whether he had ever authorized anyone to sign his name to the certificate in question, he gave the categorical answer "No",—it also appears that immediately following such answer, when the witness was asked concerning the authorization by him of his signature to another questioned certificate of stock, the following occurred: "A. I am answering that as far as I know I did not. Q. And People's Exhibit 18? A. I would like to qualify the answer to the former question to the same extent that so far as I know I didn't authorize any one to sign it. Q. You change your answer on that again? A. I want the same answer to all of them, same answer I gave yesterday. Q. Well, Mr. Conroy, has anything other than what you have stated caused you to change your testimony regarding those certificates since May, 1927? A. I am not aware that I· have changed my testimony." In such a situation the prosecution introduced in evidence, over the objection of defendant, forty other certificates of capital stock of the Julian Corporation, each of which purportedly bore the signature of Mr. Conroy as secretary thereof, but each of which signatures were by him denied as genuine. However, as to none of such signatures did Mr. Conroy testify that it was not previously authorized

by him, or that, if such were not the case, subsequent to the time of the execution of his signature thereon he had not ratified the act. More in detail, he testified that in a "vast majority" of his signatures as such secretary they were appended by his secretary who was authorized to do so; and that as to others, which readily might have included each and all of the signatures attached to the forty certificates of the capital stock represented by the exhibits in question, he had specially instructed the person who had executed such signatures as to the manner in which the genuine signature of Mr. Conroy might be more correctly copied or simulated.

In cases of the character of that here under consideration, the rule with reference to the introduction of evidence as to the commission by defendant of other crimes is succinctly stated in 8 California Jurisprudence, page 67, as follows:

"Upon a prosecution for forgery, evidence of other forgeries by the defendant of similar instruments about the same time is relevant to show guilty intent, provided it is first proved that the instrument described in the accusation *is itself a forgery,* and provided, further, that it is proved *the other instruments are forgeries,* and that the defendant was connected therewith."

From the record in the instant case it is apparent that on the trial of the action the foregoing rule was violated in that neither the *corpus delicti* of the crime for the commission of which defendant was then on trial had been or ever was established as to the particular count in the indictment in question; nor was the signature attached to either of the stock certificates offered in evidence as constituting another forgery by defendant shown not to have been either previously authorized or subsequently ratified by the person whose signature was claimed to have been forged.

As hereinbefore has been indicated, with many of the different phases of the law applicable to the facts of the instant case, I am in complete accord with the views expressed in each of the prevailing opinions herein; but at least in those respects to which attention has been directed, my mind is out of harmony either with the respective conclusions reached by my associates or with the specific reasoning upon which such conclusions are founded.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 16, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 2, 1931.