[Civ. No. 5749. Third Appellate District.—March 18, 1937.]

J. E. WOOLLEY et al., Petitioners, v. THE SUPERIOR COURT OF STANISLAUS COUNTY et al., Respondents.

[Civ. No. 5750. Third Appellate District.—March 18, 1937.]

MILLER & LUX INCORPORATED et al., Petitioners, v. THE SUPERIOR COURT OF STANISLAUS COUNTY et al., Respondents.

J. E. Woolley, Milton T. Farmer, Athearn, Chandler & Farmer, Roy V. Reppy, George E. Trowbridge, Edward F. Treadwell, Vincent J. McGovern, Treadwell, Laughlin & Treadwell and Griffin & Boone for Petitioners.

James F. Peck and Theodore M. Stuart for Respondents.

THE COURT.—We are here concerned with an application to review the record of the above-entitled court and all the proceedings had by said court and the judge of the court in an action pending in the county of Stanislaus, wherein L. A. Vandervort and others were plaintiffs, and Southern California Edison Company, a corporation, and others, were defendants, and particularly as to the legality of an order striking out a statement of disqualification filed against said judge, and of an order granting a motion for a new trial, and also with an application for a writ of prohibition seeking to restrain respondent Anthony Cami-

netti, Jr., a judge of the Superior Court of the State of California, from making any orders or taking any judicial action in said proceeding, it being the contention of petitioners that by the filing of the statement of disqualification and the failure of the respondent judge to answer the same as provided in section 170 of the Code of Civil Procedure, the judge became disqualified by operation of law.

The important issue here presented has to do with the alleged disqualification of Judge Caminetti on account of his bias and prejudice, but there are certain other matters to which we will first direct our attention.

Subsequent to the rendition of the verdict in favor of defendants in the case of *Vandervort et al.* v. *Southern California Edison Co., a Corporation et al.,* attorneys for plaintiffs filed a motion for a new trial. The notice thereof through inadvertence and error, was addressed, among others, to W. R. Dunn, as attorney for defendant Pacific Gas & Electric Company, whereas it should have been addressed to Mr. Dunn as attorney for San Joaquin Light & Power Company. However, in the place prepared for admission of service the designation of the company properly appeared, and in accepting service Mr. Dunn and his associates signed their names as attorneys for the San Joaquin Light & Power Company, that being the particular defendant represented by them. Before this notice had been actually filed with the clerk of the court, the irregularity was discovered by one of the attorneys for plaintiff, and after permission obtained from each of the attorneys who had admitted service of the notice, the notice was corrected and then filed. Furthermore, Mr. Dunn appeared at the time and place specified in the notice, and as attorney for San Joaquin Light & Power Company argued such motion upon behalf of his client.

Thereafter, and after notice of entry of judgment, a second notice of intention to move for a new trial was prepared and served by plaintiffs on defendants. Upon the form prepared by plaintiffs for admission of service of such notice, by inadvertence it read, "Due service of receipt of a copy of the within *motion to tax costs* is hereby admitted . . . " This error was discovered and the error was corrected by interlineation to read, "Notice of motion for a new trial," and the same was thereafter filed. Mr. Tread-

well refused to accept service, but service was made and established by affidavit. No one was injured by these very apparent clerical errors and no injury resulted. We therefore find no merit in these preliminary objections urged against the motions for a new trial.

We now approach the question of alleged bias and prejudice on the part of the judge who presided during the trial, as charged in the statement of disqualification filed under the provisions of section 170 of the Code of Civil Procedure by the attorneys for the defendants, other than San Joaquin Light & Power Company, which defendant did not join in this motion.

The action by Vandervort et al. was brought in the county of Stanislaus, for the purpose of obtaining a money judgment against the defendants therein named, jointly and severally, on the theory, among others, that the defendants unlawfully conspired to store, divert and use waters of the San Joaquin River above the lands of plaintiffs, who claim their lands to be riparian to the San Joaquin River and overlie water-bearing gravels supplied by the San Joaquin River.

A. Caminetti, Jr., Judge of the Superior Court of the State of California in and for the County of Amador, was assigned by the judicial council to try the issues raised in that action. The trial commenced on March 16, 1936, in the city of Modesto and continued practically continuously until the same was submitted to a jury on September 5, 1936. On that day a verdict was returned in favor of defendants. Thereafter attorneys for plaintiffs served the motions for a new trial hereinbefore referred to, which was set for hearing for October 2, 1936, and on the application of Mr. Edward F. Treadwell, the hearing thereon was continued from October 2d to October 6th, and again from October 6th to October 8th.

Upon the opening of the court on October 8th, there was presented and filed by defendants a statement of disqualification of the trial judge. At that time the court indicated its intention of first disposing of the motion for a new trial and then considering the statement of disqualification, whereupon some heated discussion took place between counsel and the court. The court nevertheless proceeded to consider the motion and granted the same as to all defendants except San Joaquin Light & Power Company, and as to that company

the court permitted it to present its argument upon briefs to be thereafter filed.

The judge of the court then proceeded to consider the statement of disqualification filed against him and thereafter ordered the same stricken from the files and adjudged the attorneys who had signed the same, guilty of contempt of court in the presence of the court, and imposed a fine of $250 upon each attorney. A stay was granted, pending which this writ of prohibition and writ of review was issued.

In order to pass upon this matter it is necessary to consider in some detail the statement of disqualification on file. It is therein charged that by reason of the bias and prejudice of said A. Caminetti, Jr., in favor of plaintiffs and against the defendants, the defendants were unable to secure a fair and impartial trial. Among the facts constituting the grounds of disqualification and to prove bias and prejudice in favor of plaintiffs it was alleged "that said Judge was biased and prejudiced against power companies in general, and opposed to the corporations' storage of water for power purposes", and during the trial of said action openly stated that he was opposed to power companies and considered them trusts and monopolies and against the public interest. It is also alleged that in a conversation with certain of the attorneys of record he stated, during the course of the trial, that Judge Woolley, attorney for Miller & Lux Incorporated, was a fine fellow but his company was—and he then applied to said company an opprobrious epithet. It is also alleged that subsequent to the trial and during the pendency of the motions for a new trial, the judge on October 2, 1936, called upon Edward Hyatt, state engineer of the state of California, and during the course of the conversation stated to Mr. Hyatt that Miller & Lux Incorporated and its companies had no water rights and that Henry Miller had stolen the lands and had stolen the waters, and that in his opinion the state of California should not pay Miller & Lux Incorporated, nor its subsidiaries, anything in connection with a contemplated plan of the state to divert the waters of the San Joaquin River at Friant from its watershed and away from the lands and canals of Miller & Lux Incorporated and other defendant companies. The statement of disqualification also declared these remarks were made for the purpose of injuring Miller & Lux Incorporated and its companies and was vicious and untrue.

It is also alleged in the statement that Judge Caminetti, before the commencement of this trial but after his assignment by the judicial council, had asked the attorneys for defendants to request the judicial council to excuse him from the trial thereof, and that the attorneys for the defendants requested the judicial council to excuse him from the trial of said case, and at that time told the council they believed he was disqualified by reason of bias and prejudice, but the judicial council replied that having been duly assigned he could only be excused under the provisions of section 170 of the Code of Civil Procedure. Petitioners herein aver that they had not so proceeded at that time, although believing him to be biased and prejudiced, because they were legally unable to establish that fact. Petitioners then alleged they were compelled to and did go to trial in said action before said judge and a jury. During the course of the trial, and after the plaintiffs had put in only a portion of their case, it is alleged in the statement, Judge Caminetti announced to defendants, petitioners herein, that it would make no difference what showing was made by any particular defendant, he would consider no motion for nonsuit or any motion for a directed verdict and would not pass upon the sufficiency of plaintiffs' case except on motion for judgment notwithstanding the verdict, and would, as to all the defendants, submit the entire matter to the jury which had been empaneled in the case.

During the entire trial of said cause, so it is alleged in the statement, the judge of the court took an active part in interrogating the witnesses, and in every instance in which questions were asked by him, they were asked directly for the purpose of obtaining some evidence in favor of plaintiffs, and in no case did the judge of the court ask any question or attempt to elicit any evidence supporting any of the claims of the defendants. Furthermore, it is alleged the judge became extremely annoyed at any objection made by defendants to questions asked by him, and in a loud voice would rule thereon showing his annoyance and general prejudice against defendants and their counsel.

That during the trial, when counsel for defendant power companies called to the attention of the court, errors made by the court in his statement of facts in the record, and insisted upon their right to make objections, or to call the

attention of the court to such errors, the judge of the court would become extremely angry. It is alleged also, that time and again out of court he threatened to visit corporal punishment upon one of the attorneys for the defendants. It is also alleged that the judge of the court attempted to have the reporter change his record in regard to a matter in which he and certain of the attorneys were in dispute. Also, that during recesses of the court, the judge permitted attorneys for plaintiffs to retire to his chambers and there engage in consultations with the judge over matters connected with the case, and that these consultations were also carried on by the judge and attorneys for plaintiffs at the hotel where they met daily and dined in public consultation.

That prior to the argument of the case, so it is alleged, the judge of the court delivered to all the attorneys certain instructions which he said were instructions that he was going to give the jury and that he would not allow any attorney to make any argument to the jury contrary to those instructions. Notwithstanding that statement, it is alleged he permitted attorneys for the plaintiffs to make arguments on the law whether in accordance with such instructions or not. On another occasion, long before the evidence had been concluded, it is alleged, the judge stated that the plaintiffs in the action had made a mistake in amending their complaint so as to ask for damages, and stated to one of the attorneys for defendants that if the prayer of the complaint was for an injunction and no jury was present he would open the flood gates of Mendota dam and permit the flow of the waters of the San Joaquin River to the lands of plaintiffs. We have not set forth in full the statement of disqualification, covering some twelve or thirteen pages of the record, as it is too long to be here quoted in full, but we have attempted to set forth the salient feature of the charge.

Let us now, with these specifications of bias and prejudice before us, examine the law applicable thereto.

That portion of section 170 of the Code of Civil Procedure essential to a consideration of this matter, reads as follows:

"No . . . judge . . . shall sit or act as such in any action or proceeding; . . .

"5. When it is made to appear probable that, by reason of bias and prejudice of such . . . judge . . . a fair and impartial trial cannot be had before him."

The section then provides the method of establishing such disqualification, and then prescribes the steps to be taken, as follows:

"The statement of a party objecting to the judge, on the ground of his disqualification, shall be presented at the earliest practicable opportunity, after his appearance and discovery of the facts constituting the ground of the judge's disqualification, and in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such judge."

No affidavit was filed by respondent judge to the verified charges made by petitioners as provided by this section, and we must therefore assume such matters as are therein properly and timely alleged, to be true. The question therefore presented in the present state of the record is whether such allegations were timely made, and if so, do they as a matter of law constitute grounds for disqualification?

It is the contention of respondents that petitioners are now estopped to question the disqualification of respondent judge, for although, as claimed by petitioners, the judge was disqualified as early as February 12, 1936, because of bias and prejudice, which fact was then known to them, they failed to raise that question until October 8, 1936, and during that interval permitted respondent judge to proceed, without objection, to try, and to complete said action, occupying in actual trial over 100 days. With that contention we must agree.

Courts must guard against the possibility of a party, who claims the trial judge is biased or prejudiced, refraining from raising that question, trusting to get a favorable verdict, and thereafter raise the question to deprive the trial judge of his statutory duty to pass upon a motion for a new trial, thereby using section 170 of the Code of Civil Procedure as a tool to enable one to keep the benefit of a favorable verdict before a biased and prejudiced judge, and at the same time prevent that judge from passing upon a motion for a new trial.

It appears from certain uncontroverted affidavits that a meeting was called on February 12, 1936, in the office of the secretary of the judicial council in San Francisco by Mr. Treadwell, at which meeting was present Mr. Treadwell as

attorney for Southern California Edison Company, Mr. Woolley as attorney for Miller & Lux Incorporated, and its subsidiary corporations, Mr. Farmer as attorney for Chowchilla Farms, Inc., Mr. Dunn representing San Joaquin Light & Power Company, and Mr. Peck, Mr. Stewart and Mr. Finnell, Jr., attorneys for plaintiffs, and Mr. B. Grant Taylor, Secretary of the judicial council. At this meeting, called to discuss the qualifications of Judge Caminetti, who had then been assigned by the council to preside at these trials, it was there asserted by at least one attorney for the defendants that Judge Caminetti was inexperienced in water litigation and desired to be released from the assignment to preside in the case of *Vandervort et al.* v. *Southern California Edison Co. et al.*, and that he was prejudiced against the defendants in that litigation. It was there further charged that Judge Caminetti favored plaintiffs because he had attended school with a son of Mr. Peck, one of the attorneys for plaintiffs. To this charge Mr. Peck replied that his son had passed away and that there was nothing in the acquaintanceship between the judge and the deceased son that could possibly cause bias and prejudice for or against the parties to the litigation.

At the conclusion of the conference the judicial council refused to revoke the assignment of Judge Caminetti unless the judge himself requested such revocation, and the attorneys for the defendants were told by the secretary of the council that if they considered Judge Caminetti was biased or prejudiced they should proceed to establish his disqualification in the manner prescribed by the code, to which Mr. Treadwell replied in effect that he would file a statement of disqualification when the case was called for trial. When the case was called on March 12, 1936, all of the attorneys who were present at the conference in the office of the secretary of the judicial council were present in court and answered ready, but no statement of disqualification was filed nor any question of bias or prejudice raised until the return of the verdict of the jury some six months thereafter, and just prior to the consideration of a motion by the plaintiffs therein, for a new trial.

An examination of the statement of disqualification shows upon its face that with the exception of one instance, to be referred to later, all of the facts upon which the alleged bias and prejudice was founded, occurred and were known to

counsel long before the submission of the case. For instance, it is alleged in the statement of disqualification "that said judge is biased and prejudiced against power companies in general and is bitterly opposed to corporations' storage of water for power purposes" and "during the trial of said action openly stated that he was opposed to power companies . . . " It is further alleged that he said during said trial that he was against these defendant power companies and thought they ought to pay the damages which they had done. It is further charged in the statement "that during the course of the above trial the said judge became biased and prejudiced against the defendant land companies and principally against Miller & Lux Inc., and its subsidiaries and affiliated companies", petitioners herein.

As a reason for not submitting a statement prior to the conclusion of the taking of the testimony defendants alleged that they were satisfied that A. Caminetti, Jr., was biased and prejudiced, but were not able to legally establish the same. It is further charged that said A. Caminetti, Jr., stated that if any attempt were made to disqualify him, the person who made it would be sent to jail. Just when this alleged threat was made does not appear, but obviously during the course of the trial. It is furthermore alleged that after plaintiffs had put in only a portion of their case in chief, and before any evidence whatever had been put in by defendants said judge announced he would not consider any motion for nonsuit or any motion for a directed verdict, and would not at any time consider the sufficiency of the plaintiffs' case except upon a motion for judgment notwithstanding the verdict.

It is also alleged that "during the entire trial of said case the said A. Caminetti Jr., took an active part in the trial thereof, examining witnesses . . . for the purpose of obtaining some evidence in favor of the plaintiffs, and in no case did the said A. Caminetti Jr., ask any question or attempt to elicit any evidence supporting any of the claims of the defendants". "That said A. Caminetti Jr., when he would attempt to elicit evidence on behalf of plaintiffs would become extremely annoyed at any objections made by defendants, and in a loud voice would make rulings showing his annoyance and of general prejudice against defendants or their counsel. During the trial of said cause the said

A. Caminetti Jr., threatened counsel for the defendant power companies with contempt proceedings when they insisted upon their right to make objections or to call attention to errors made by the Judge in his statement of facts in the record." That at other times during the progress of the trial "he threatened to visit corporal punishment upon one of the attorneys for the defendants". It is charged that upon another occasion during the progress of the trial the judge attempted to get the reporter to change the record in a certain particular, which the reporter refused to do.

"During the entire trial of said cause, almost invariably after a recess was declared, the attorneys for plaintiffs would retire to the chambers of the Judge and there engage in consultations over matters connected with said case." It is also charged that such consultations were carried on by the judge and attorneys for plaintiffs at the hotel and in the public dining room. "Prior to the argument of said case, said Judge delivered to the attorneys certain instructions which he said were instructions he was going to give to the jury, and he would not allow any attorneys for the defendants to make any argument which was contrary to those instructions. Notwithstanding this, he permitted attorneys for plaintiffs to make any kind of argument on the law which they desired to make whether in accordance with the instructions or not."

It is also alleged that the judge stated that the plaintiffs in the action had made a mistake in amending their complaint so as to only ask for damages, and he was therefore unable to grant plaintiffs an injunction, and that if he had the power he would open the Mendota dam of Miller & Lux Incorporated, in order to permit the flow of the waters from the San Joaquin River to the lands of plaintiffs.

The foregoing is a brief summary of the allegations and charges made in the statement of disqualification filed herein. We have quoted at length in order that it might become apparent that the facts upon which the charges of disqualification are based were known long before the conclusion of the taking of evidence, as appears from the very allegations of the statement. It is thus apparent that practically all of the allegations or charges made were known "during the course of the above trial" or "shortly after the said A. Caminetti Jr., was assigned to the above entitled action", "and after plaintiffs had only put in a portion of their case in chief", "there-

after and after the case had proceeded for many weeks'',
"during the entire trial of said case'', "during the trial of
said case'', "thereafter on other occasions when one of the
attorneys for defendants submitted to said Judge certain
forms of verdict'', "prior to the argument of said case'',
and many other expressions indicating that practically all
the matters alleged were known to attorneys for defendants
long prior to the conclusion of the trial. In fact, shortly
after Judge Caminetti had been assigned to preside as the
judge in the Vandervort action, and before the trial, the charge
was then made by certain of the attorneys for the defend-
ants that Judge Caminetti was prejudiced against the de-
fendants in said litigation, that he lacked experience, and
that by reason of the fact he had attended school with the son
of James F. Peck, he was in favor of the plaintiffs. When
the secretary of the judicial council stated the council would
not revoke the assignment of Judge Caminetti, one of counsel
for defendant stated he would proceed to file a statement of
disqualification against Judge Caminetti when the said case
was called for trial. It further appears without denial that
shortly thereafter Mr. Treadwell, as attorney for one of the
defendants, wrote a letter to the secretary of the judicial
council further insisting that the assignment be revoked.

In the recent case of *Krebs* v. *Los Angeles Ry. Corp.*, 7 Cal.
(2d) 549 [61 Pac. (2d) 931], it was there charged the trial
judge was biased and prejudiced, but the Supreme Court
held that the moving parties had lost their right to object to
the qualifications of the judge who passed upon the motion for
a new trial, because of their failure to file the statement of
the disqualification at "the earliest practicable opportunity"
as required by section 170 of the Code of Civil Procedure.
The court there said "Notwithstanding the alleged bias and
prejudice against plaintiffs' case which said judge evinced
by his remarks and conduct during the trial, the jury re-
turned a verdict for both plaintiffs. They desire to retain
the judgment entered for them on said verdict, and urge the
disqualification of said judge only for the purpose of in-
validating the action taken by him on the defendant's motion
for new trial.

"It is unnecessary here to set forth the acts and state-
ments upon which plaintiffs rely to show prejudice. We
are compelled to the conclusion that plaintiffs lost the right

to object to the qualification of said judge not only by failing to file a statement of his disqualification at 'the earliest practicable opportunity', as required by section 170 of the Code of Civil Procedure, but also by voluntarily withdrawing the affidavit of bias and prejudice filed by them after the hearing on defendant's motion for a new trial.''

And again, ''If disqualification of the judge resting on bias and prejudice could not be waived, it would follow that the acts of bias and prejudice on which plaintiffs rely, if sufficient to set aside the order for new trial, would invalidate the judgment which plaintiffs seek to retain. The acts which plaintiffs cite to demonstrate the disqualifications took place during the trial and prior to said judgment.''

It appears from the affidavit of Mr. Treadwell that at the close of the trial in *Vandervort* v. *Southern California Edison Co. et al.,* counsel for all of the defendants, after considering the matter, agreed not to file a statement of disqualification against Judge Caminetti. Also, when court and counsel were considering the statement of disqualification, Mr. Farmer stated: ''I want to say this Your Honor, that all the matters appearing in this affidavit were prepared and presented to me weeks ago. I had no intention nor purpose of signing those affidavits—those matters—although I believe them to be true, until I was informed yesterday morning that Your Honor had gone to Sacramento and done the things which Your Honor has admitted that you did to-day in reference to the properties of Miller & Lux Inc. which could bear no other construction excepting a malicious and purposeful desire on your part to injure a party litigant before you . . . '' We must therefore assume counsel had reached the conclusion that the alleged acts of Judge Caminetti, either before or during the trial, were insufficient to show bias or prejudice on his part and such action was therefore equivalent to a withdrawal of all of the charges they could have then made.

With the exception of the Hyatt incident, which will be referred to later, and to which Mr. Farmer was referring in his statement to the court, the alleged grounds for disqualification have to do with the facts occurring either before or during the trial and before its close. Section 170 of the Code of Civil Procedure enumerates five grounds for disqualification. The first four go to the fundamental qualifica-

tions of the judge, and, when established, void all proceedings. The fifth ground, that is, bias or prejudice, works a disqualification only as to future proceedings. That is undoubtedly one of the reasons the section demands of one who seeks to so disqualify a judge to do so at the earliest practicable opportunity after the discovery of the facts, or in any event before the commencement of the hearing of any issue of fact.

When, as here, the statement of disqualification was filed after judgment, and after two extensions of time had been granted petitioners within which to oppose motions for new trials, and when it appears from the statement of disqualification, that the defendants were relying largely upon facts within their knowledge before and during the course of the trial, the trial judge was justified in striking the statement from the record as being too late to comply with the provisions of section 170 of the Code of Civil Procedure. (*People* v. *Berman*, 117 Cal. App. 334 [4 Pac. (2d) 226]; *People* v. *Nolan*, 126 Cal. App. 623 [14 Pac. (2d) 880].)

In *Lindsay-Strathmore Irr. Dist.* v. *Superior Court*, 182 Cal. 315 [187 Pac. 1056], the court in considering a point somewhat similar to the one before us, said:

"It would seem to be intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he was aware, and thereby permitting the proceedings to go to a conclusion, which he may acquiesce in if favorable, and which he might avoid if not."

In the case of *People* v. *Berman, supra,* the defendant, after having been convicted, procured an extension of time within which to move for a new trial. Shortly before the expiration of the statutory time for the pronouncement of sentence, he filed a statement of bias and prejudice. The delay in filing the statement could have resulted in the granting of the new trial by operation of law regardless of the merits of the motion. This situation was recognized and commented upon by both Justices York and Conrey, authors of the two opinions in the Berman case.

This leaves for consideration as an additional ground of disqualification, a conversation between Judge Caminetti and Mr. Edward Hyatt, state engineer of the state of California, had October 2, 1936, and some weeks after the Van-

dervort trial had ended, and during the pendency of the motions for a new trial. In this conversation it is alleged in the statement of disqualification, that Judge Caminetti "informed the said Hyatt that Miller & Lux Incorporated, and its said companies had no water rights and that Henry Miller had stolen the lands and stolen the waters, and that the state authority of which the said Edward Hyatt was and now is the executive officer, would be very foolish to pay and should not pay Miller & Lux Incorporated, and the said companies, anything in connection with the plan of the state to divert the waters of the said San Joaquin river . . . "

It is to be seen from the foregoing, no reference at all was made to the Southern California Edison Company nor the San Joaquin Light & Power Company nor the Chowchilla Farms Inc. As to Miller & Lux Incorporated and its companies, that was a statement that they had no water rights. Inasmuch as bias and prejudice are never implied and must be established by clear averments (*Higgins* v. *City of San Diego,* 126 Cal. 303 [58 Pac. 700, 59 Pac. 209] ; *Blodgett* v. *Superior Court,* 210 Cal. 1 [290 Pac. 293, 72 A. L. R. 482]), we cannot read into this conversation any bias or prejudice.

■ It further appears that Henry Miller, who was charged with having stolen the lands and the waters, was not a party to the present action, he having been dead for many years. It does not appear that there is more involved in this controversy as to Henry Miller than the use of his name in the title of the corporation. Bias or prejudice to be a basis of a suit, or charge as is here made, must be bias or prejudice directed against a party or his counsel. (*Estate of Dolbeer,* 153 Cal. 652 [96 Pac. 266, 15 Ann. Cas. 207].)

The conversation between Mr. Hyatt and Judge Caminetti was therefore insufficient to establish bias or prejudice on the part of Judge Caminetti either in favor of or against any party or counsel in the cause pending before him.

A situation somewhat similar to the Berman case, *supra,* might have resulted here. The verdict was returned September 5, 1936; notice of motion for a new trial was filed September 14, 1936, and October 2, 1936, was the earliest date that court and counsel could fix for the hearing of the motion. Further extensions were obtained by counsel for petitioners to October 8th, by which time, 24 days had passed of the 60 days within which the court, by statute, was com-

pelled to act upon a new trial, or the same would be automatically denied. (Sec. 660, Code Civ. Proc.). We refer to this to illustrate the importance of the provisions of section 170 of the Code of Civil Procedure, requiring that such statements of disqualification be presented at the earliest practicable opportunity. It would have been almost a physical impossibility for any judge not familiar with this case, with its long record and several hundred exhibits, to have become sufficiently familiar to have ruled upon the motion for a new trial within the time fixed by law. Perhaps the rule expressed in 33 Corpus Juris, Judges, (sec. 130) C. might be here applicable. . . . "Where disqualification, if permitted to prevail, destroys the only tribunal in which relief may be sought and thus effectually bars the doors of justice, the disqualified judge is bound to hear and decide the cause. But to justify a disqualified judge in sitting in a cause in which he is directly interested, the necessity must be imperative in the determination of which the greatest care should be exercised."

In view, therefore, of our conclusions, that the statement attempting to charge bias or prejudice was filed too late, it was not error to strike the statement from the files.

■ Respondents have filed applications to amend the record by attempting to show that on June 29th, and while the Vandervort case was being tried, the cases of *Newhall* v. *Southern California Edison Co., Ltd.*, and *Wilson* v. *Southern California Edison Co., Ltd.*, were called for setting, at which time Mr. Treadwell then asked the court for a sufficient continuation in those matters to file affidavits of bias or prejudice. Inasmuch, however, as the statement of disqualification was not answered either in the time or in the manner prescribed by section 170 of the Code of Civil Procedure, we are not concerned with any issue as to the truth of the allegations in the statements. The allegations not having been denied, we must assume them to be true. The question here confronting us is not as to the truth or falsity of the statement, but whether as a matter of law, it states any facts sufficient to entitle petitioners to the relief sought, and particularly whether or not the same was filed in time. The request to file the amendment to the record is therefore denied.

■ We cannot agree with the trial court, however, that the presentation or the filing of the statement of disqualification constituted a contempt of the court. Section 1209 of the Code of Civil Procedure states what acts or omissions con-

stitute a contempt of the authority of the court. No criticism can be made of the manner of the presentation, and we must assume, in the absence of any reply by the trial judge, that counsel acted in good faith in their recital of the facts upon which they based their allegations of bias or prejudice.

We are not now passing upon the conduct or remarks of counsel during the progress of a protracted trial, carried on during the very hottest part of an extremely hot summer in the San Joaquin Valley, and in a hall probably not conveniently arranged, but only with the time and manner of presenting this charge of disqualification. We cannot find in that alone, sufficient ground to uphold the judgment of contempt. That portion, therefore, of the judgment, finding those attorneys who presented the statement of disqualification, guilty of contempt, is set aside. The order striking the statement from the files is affirmed, and the writ of prohibition herein prayed for, is denied.

A petition for a rehearing of case No. 5750 was denied by the District Court of Appeal on April 17, 1937, and an application by petitioners to have said case heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 17, 1937.