[Crim. No. 1661.  Third Appellate District.—April 14, 1939.]

THE PEOPLE, Respondent, v. GRANT SPEAR, Appellant.

George R. Andersen, Herbert Resner and George Olshausen for Appellant.

Earl Warren, Attorney-General, and J. O. Brown, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Appellant herein was charged by information with the crime of riot, was found guilty, and now appeals from that judgment of conviction.

This case is identical as to the facts, 3 Crim. 1648, with the case of *People* v. *Yuen et al.*, No. 3–1648, which we have heretofore considered and this day filed (*ante*, p. 151 [89 Pac. (2d) 438]). As there pointed out, a strike was in progress at the Murchie Mine near Nevada City. A picket line had been established at the junction of the main highway and the mine road. About 7 o'clock in the morning on January 20th,

about 75 or 80 pickets were gathered there in close formation across the road and extending up on either bank. At this point the road is just about wide enough for two cars to pass and the banks on each side are some two or three feet high. Sheriff Tobiassen of Nevada County drove up on the morning in question, and shortly after his arrival a caravan of automobiles approached the intersection coming from Nevada City. This caravan contained men who wished to proceed to the mine to go to work. When the leading car approached the Murchie Mine road, the pickets lined up across the road and on to the adjacent banks and the car came to a stop "right up against those men". A group of men were "directly in front of the automobile". A man named Circle who was "right up against the bumper of the car and sometimes on the bumper", was waving his hands and shouting, "they cannot pass; we cannot let them go through; we will die first", and called upon his associates to assist him in holding the road. A rock was thrown through the windshield and the car was seized and attempts were made by the pickets to overturn it. It was then or just prior thereto, that the sheriff ordered the group to disperse. Upon their failure so to do, tear gas was discharged into the group of pickets, and a scuffle ensued between the officers of the law and the striking miners.

It is the contention of Spear, the appellant, that he did nothing until after the discharge of the gas and that he was standing on the bank beside the road, and when the gas was used he jumped down into the road. Witnesses for the prosecution, however, testified that Spear was on the bank at the side of the road, and jumped from the bank on to the back of a deputy sheriff, knocking the latter down, and then proceeded to pummel him with his fist. It was also testified by another witness for the prosecution that while another picket held the deputy sheriff, Spear struck him.

The principal argument of appellant seems to be that the sheriff acted illegally in his effort to disperse the pickets, and that he, Spear, was justified in replying thereto with force. We find ample evidence in the record to show that these pickets were not engaged in peaceful picketing and that the sheriff was entirely justified in his course of action. It is undisputed that between 60 and 80 men were standing in close formation in and across the narrow Murchie Mine road

awaiting the approach of the cars. These men were not standing along the side of the road nor parallel thereto, as would be the natural position had they intended merely to speak to the men in the cars as the cars passed along the road, but were blocking the highway.

As was said by Judge Dooling in an opinion rendered by him in the trial of the case of *Howard Automobile Company Employees* v. *Retail Salesmen's Local Union No. 1067*, cited in 13 California State Bar Journal, page 13:

"Picketing in the public mind is associated with violence and intimidation. There was a time, and not so long ago, when the courts of California, in common with most of the courts of the country, were committed to the idea that there could be no such thing as peaceful picketing. With the decision of the Lisse case, *supra* (*Lisse* v. *Local Union etc.*, 2 Cal. (2d) 312 [41 Pac. (2d) 314]) our Supreme Court finally turned its back on this now generally outmoded doctrine. But while peaceful picketing is now recognized as a lawful weapon in the contest between capital and labor, it must in truth be peaceful. The courts will not tolerate physical violence, or threats of violence, physical intimidation or misrepresentation of the facts, and where these exist they must be unhesitatingly enjoined. As so limited, peaceful picketing consists of bringing the facts to the attention of the general public by means of one or more persons stationed about the place of employment which is being picketed. So conducted, peaceful picketing is an attempt to bring to bear upon the picketed employer the pressure of the opinion of such portion of the public as may be sympathetic to the objects of the picketing organization, by inducing that portion of the public to cease dealing with the picketed business. . . . the resort to any . . . physical intimidation directed toward the employer, his employees or any member of the public, cannot and will not ·be tolerated by the courts. Upon so much all courts and all right thinking people must be agreed."

It would seem clear that such a large body of men, even if not gathered for that purpose, would nevertheless have the effect of intimidation or coercion, and to that extent picketing in the instant case was a violation of the law, and the sheriff was within his rights in ordering them to disperse. ▮ Even if we were to assume the defendant was justified in resisting the use of gas by the sheriff he was not justified in attacking the deputy, as there is no claim that the deputy

had done anything to Spear prior to Spear's assault upon him.

█ Undoubtedly this large group of men were there for the purpose of seeing to it that no underground miners went through to the mine. It did not require actual or physical violence to accomplish this purpose, for their presence alone in such numbers, and under the circumstances then existing, would result in intimidation and fear, or at least would constitute an annoyance to passers-by. This being true, such act would constitute an unlawful obstruction of the road and prevent the lawful use thereof by the public by interfering with traffic thereon, and it was to that extent an unlawful assemblage. The sheriff was not only justified, but in duty bound, to disperse this unlawful gathering, and the refusal to disperse upon the command of the sheriff was a violation of the law. These conditions existed prior to any force used by the sheriff, and if defendant Spear remained in the group after being ordered to disperse, his presence there was illegal and the sheriff was justified in using sufficient force to clear the highway.

It is not within the bounds of reason to expect a jury or this court to believe that the attempt to tip over the car of a third person, throwing rocks through the windshield of a nearby car, the pouring of water upon its distributor, or the stopping of cars proceeding along the road, was done merely to indicate a lawful resistance to an officer of the law. █ The law gives to a citizen a right of action against a sheriff for an unlawful exercise of his authority, but if the citizen attempts to decide for himself whether or not the sheriff is acting within the scope of his authority he does so at his peril. The law does not countenance a breach of the public peace in order to enforce a private right. Courts are created for the purpose of determining those rights, and any other rule would result in private battles going on at various times and places, to the great inconvenience of the general public. Such a rule is not to be accepted or approved.

The point is made in this case, as it was in the case of *People* v. *Yuen, supra,* that the appellant's motion for a change of venue was improperly denied. Practically the same showing was made in this case as was made in the former case, and we are impelled to the same conclusion.

█ So, also, were appellant's challenges for cause properly denied. He cites the case of juror Goodnight, claiming

that she admittedly had an opinion. Appellant attempted to show that Mrs. Goodnight was prejudiced against him because of the organization to which he belonged. In answer to this question by the court, "Do you believe he was guilty because he belonged to a Union or because he was a picket," She answered, "No, because there might be things happen that might make it look like he was guilty when he wasn't. He might have been there in the gang when he might not have been guilty." She also stated in answer to various questions that she would consider him innocent until he was proven guilty, and that whether or not he was a member of the C. I. O. or went on strike would not influence her as to his guilt or innocence, and that she would decide the case according to the evidence and the law. She also stated that she had read nothing about the case and had heard very little of it discussed, and knew nothing as to whether it was right or wrong.

We appreciate that where it is impossible, as here, to set forth the entire examination on *voir dire* of the witness, it is difficult for a reader of an opinion by a court to get the effect thereof, but having read the transcript, we agree with the trial judge, who heard the entire examination, and who is by law the judge of the qualifications of a juror in the absence of abuse of discretion, that juror Goodnight was qualified to act as a juror, and the record supports such conclusion.

In the case of juror Bice, a somewhat similar condition existed. He was carried through a long examination by both the People and appellant and his answers conflicted from time to time. But, as said in the case of *People* v. *Riggins*, 159 Cal. 113 [112 Pac. 862], the question of whether or not a prospective juror is or is not actually biased is to be determined by the trial judge. If the answers were conflicting, the decision of the trial court is conclusive upon this court.

■ It is claimed the court erred in refusing to permit defendant to show that it was the intention of the sheriff to take the miners through the picket line regardless of the pickets' rights of persuading them to stay away. To begin with, we cannot assume that the pickets were attempting to form a "line", if we mean thereby a solid formation across the road, and we cannot assume that they were lined up with the intention of compelling an automobile to stop in order that they might talk to the occupants. Such would

be a violation of the fundamental right of privacy. (*Southern California Iron & Steel Co.* v. *Amalgamated Assn.*, 186 Cal. 604 [200 Pac. 1] ; *Allis Chalmers Co.* v. *Iron Moulders Union,* 150 Fed. 155.) In other words, a picket line is nothing more substantial than an advertisement of a fact to be read or not, as one would read a billboard. We do not believe that the refusal to permit the witness to answer the question as to the intention of the officers in proceeding to the junction of the highways is material. It is what they did in which the court is concerned.

It is claimed that the trial judge was disqualified to try this case by reason of the remarks made by him at the time of the sentence of the defendants in the case of *People* v. *Yuen, supra.* In his remarks the trial judge called attention to the fact that members of the same union to which those defendants belonged, as well as appellants here, published a paper in which they attacked the judge and other county officials of Nevada County, and that thousands of postcards addressed to the judge demanded that the defendants be dismissed. Inasmuch as neither those defendants nor their counsel had repudiated such actions, the court stated he must assume they approved thereof. The judge referred to the fact that some of those defendants, at various times appeared before labor groups in an endeavor to raise funds for their defense, in which they claimed to be martyrs in the cause of labor. He also criticized one of the defendants for using the name of the President of the United States in defense of lawlessness and civil disorder. We can see nothing in these remarks that indicate any personal animosity toward this defendant nor his cause.

Appellant cites the case of *Briggs* v. *Superior Court*, 215 Cal. 336 [10 Pac. (2d) 1003], as authority for disqualification of the judge. In that case a judge had definitely expressed himself at the time of the hearing upon the question of his disqualification to the effect that prior statements published in a certain newspaper were unqualifiedly false. The statements in the newspaper were the gravamen of the offense. Here the trial judge at no time expressed himself as saying that he believed the statements made by the Yuen defendants were in any manner false. As a matter of fact he stated that the postcards he received were false because they were not in accord with the testimony of those defendants on the witness stand. Nowhere does it appear that he

had any animosity against defendant Spear, who was not a defendant in the Yuen case, and the only witness whom he criticized was a man named Irwin, who did not testify in the Spear case. The qualifications of Judge Tuttle were attacked prior to the trial of this case, and his qualifications were passed upon by Judge Landis, who heard the evidence and considered the various affidavits submitted, and found Judge Tuttle to be impartial and not disqualified. There is nothing in the showing here made that would justify us in disturbing the findings of Judge Landis.

As to the so-called rule of Judge Tuttle as to probation, we have already considered that in the Yuen case and need not again repeat what we there said.

Having read the record in these cases, and the briefs in opposition and support of the judgment, we are satisfied that this defendant was properly found guilty, and no errors affecting his substantial rights were committed.

The judgment and the order, therefore, must be affirmed, and it is so ordered.

Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 13, 1939. Houser, J., voted for a hearing.