[Civ. No. 7927. Third Dist. Aug. 3, 1950.]

JAMES McKAY et al., Petitioners, v. THE SUPERIOR COURT OF SHASTA COUNTY et al., Respondents.

Clarence H. Pease, William H. Lally, Kennedy Jackson and Rupert Crittenden for Petitioners.

Fred N. Howser, Attorney General, C. J. Scott, Assistant Attorney General, Doris H. Maier, Deputy Attorney General, and Frank W. Shuman, District Attorney, for Respondents.

THE COURT.—This is a proceeding to obtain a peremptory writ of prohibition addressed to the Honorable Albert F. Ross, as Judge of the Superior Court for Shasta County, restraining him from proceeding further in an action pending in that court.

It appears from the petition that on June 1, 1950, an indictment was found and filed in the Superior Court in Shasta County in Action Number 16879 therein, whereby the grand jury of that county accused petitioners James McKay and Robert Sturm of the crimes of murder; further that said McKay and Sturm, through their counsel, and on July 18, 1950, presented to the said superior court and filed with the clerk thereof, written statements objecting to the hearing or trial of any issues of fact or law in said action before Judge Ross, pursuant to the provisions of section 170 of the Code of Civil Procedure of this state, and of subdivision 5 thereof, basing their said objections upon the ground that it appeared probable that by reason of bias and prejudice on the part of Judge Ross a fair and impartial trial in said action could not be had before him; said statement having been filed, Judge Ross declined to consent that the action be tried before another judge and filed with the clerk his answer to the allegations contained in the statement, whereupon the Judicial Council

assigned the Honorable Warren Steel, Judge of the Superior Court in Yuba County, to hear and determine the question of the disqualification of Judge Ross; on July 19th Judge Steel heard the matter upon the affidavits filed in support of the statement of disqualification, the answer thereto of Judge Ross and a transcript of the proceedings before Judge Ross on the filing of the statement, all of which was stipulated into evidence; the matter being submitted to Judge Steel for his determination, he decided that Judge Ross was not disqualified to proceed with the action.

Thereupon McKay and Sturm petitioned this court for a writ of prohibition, and upon the filing of said petition we directed the issuance of the alternative writ and the matter has been heard and submitted for decision.

In brief, the statements of objection on the part of McKay and Sturm allege the following: That for many years Earl Sholes and Dan Heryford, persons alleged in the indictment to have been murdered, resided in the county of Shasta and in the city of Redding, during all of which time Judge Ross was likewise a resident of the same community; that the persons alleged to have been murdered were respectively under-sheriff and deputy sheriff of said county and for a long time Judge Ross and the said persons had conducted daily official business together; that the judge had for more than 15 years been intimately acquainted with Sholes and engaged with him in social and athletic events and in matters of official business on countless occasions; that Earl Sholes had at one time been acting Chief of Police of the City of Redding, and that the judge and Sholes were mutual close friends at the time of the alleged murder of Sholes; that Judge Ross was unavoidably acquainted with the facts involved in the action; that in 1918 the judge's father, who was then Sheriff of Shasta County, had been killed while acting in the scope of his duty by a prisoner then in his custody, under circumstances somewhat akin to the circumstances which the prosecution contended surrounded the demise of said decedents; that there had been unusual and extensive prejudicial publicity against McKay and Sturm, causing a state of feeling, sentiment, bias and prejudice in the county which made it appear probable that a fair and impartial trial could not be had before any judge living therein; that these matters of bias, prejudice, sentiment and feeling were known to Judge Ross and that this situation made it improbable that he could sit as a trial judge without

being affected thereby to such an extent that he could not give the defendants a fair and an impartial trial.

When the statements were filed in open court Judge Ross commented thereon in the following manner: He said that he did not feel that he had any disqualification actually; that the mere fact he knew the decedents would not disqualify him to proceed; that the fact his father, while sheriff of the county, had been killed would not disqualify him because his father had been killed by an insane man who didn't know what he was doing and that there were as to that no bad feelings on his part.. He then said:

"However, it is understood, or is it understood that if I am disqualified you will still proceed before a jury? Of course disqualification is disqualification of a judge whether it is a judge or a jury trial, however it might make a difference. I might admit a possible disqualification to pass on questions of fact and not feel a bit disqualified in matters of law, and that quite often happens. In civil cases who [you] have a trial by jury I can sit here and preside and rule on the evidence and let the jury decide whether the plaintiff or the defendant is entitled to a verdict while if I had to do it myself my possible acquaintance with one of the parties would make no [me] hesitate to say that I could be entirely fair in deciding a question of fact and what witness should be believed and so forth. That would not be up to the judge in the case of a jury trial. However I admit in an abstract matter of law the judge is either disqualified or he is not and you have a right to request a ruling on it. Would that point make any difference?"

Counsel for McKay and Sturm replied in substance that they thought it would be better for the judge to consent to disqualification, to which counsel representing the People objected. After some further discussion, Judge Ross commented as follows:

"I don't want to evade my duty. I am here and paid to preside in these cases and I don't feel that I am personally disqualified in this case. . . .

"In spite of what I said before and due to the district attorney's objection I am not at this time going to consent, blanket consent, to my disqualifications or admit my disqualification. I will say this—I don't know what the district attorney will think about this but I will say it—that if a jury trial is to be waived and the case tried before a court without a jury I will consent to my disqualification right now. If a jury trial is

waived so that the case is tried before a judge without a jury I will consent to my disqualification because I do feel if I would have to take the functions of the jury and determine guilt and degree and penalty and so forth, then perhaps the things stated by the defense would constitute a disqualification. I doubt that they actually constitute disqualification to try the case with the jury because all the judges does is rule on the evidence and the jury has to decide all questions of fact. It wouldn't make any difference whether the judge believes a witness or doesn't believe him; the jury has the say. So I don't believe as a practical matter that I am disqualified to preside at a jury trial. I realize that that may be a matter of practicality and not of legality when a judge either is disqualified or isn't but I do feel qualified to preside over a jury trial. I might be disqualified if I had to determine the fact of murder and the degree and penalties because as stated I was a very good friend of both Mr. Sholes and Mr. Heryford but I don't think that would disqualify me from doing my duty, however.

"The fact that my father was sheriff and was killed would not disqualify me. As I stated, that fact that my brother-in-law was warden of Folsom Prison and was killed in a break there should if anything influence me more than my father's case although it would not influence me. . . .

"So at this time I will file a brief written denial of disqualification saying that I am not disqualified to try the case before a jury unless you stipulate that the jury will be waived and I take it that is out of the question at this present time."

Thereupon Judge Ross announced that he would ask that another judge be sent in to hear the matter of his alleged disqualification and that in the meantime he would file an answer, saying:

"I will file it within the next half hour, it will be brief but to the extent that I said, that I don't consider myself disqualified to try the case with a jury, or words to that effect."

He further averred in substance that he had known Earl Sholes and Dan Heryford since about 1915; that they were about the same age as he was and that all three had lived in Redding or in Shasta County all of their lives; that his relations with the decedents was a friendly relationship with both in public matters and in connection with official duties, but that he had not visited at the home of either nor engaged in social matters with them, except that they had been members of one or two fraternal organizations to which he belonged, but

that he could not remember having been present with either of them at any activities of such organizations; that he had engaged in basketball team play with Earl Sholes while both were members of the American Legion back in 1922, and other than that he had not engaged in athletic activities with them; that his associations with the decedents had been in connection with official matters while Sholes was chief of police and while both were in the sheriff's office; that he had been District Attorney of Shasta County from 1927 to 1933—and in this connection, of course judicial notice may be taken of the fact that he had been continuously the Judge of the Superior Court in Shasta County since 1933. He further averred:

"Affiant does not believe there is any widespread prejudice against defendants herein in Shasta County; there was considerable shock at the time of the alleged murder and there is a feeling among the friends of deceased that the killers should be adequately punished but there is a disposition that the punishment should be duly left to a court acting on legal evidence before it, and affiant feels that a fair and impartial jury can be obtained to try this action and no public feeling whatever has influenced affiant as a judge in this action whatever.

"Affiant therefore alleges that he is not disqualified as a judge for this action. However, if there should be a waiver of a jury trial or a plea of guilty which would necessitate a hearing before the judge as to degree of crime and penalty, affiant would and hereby offers to consent that said matters be tried before another judge, but if the trial is to proceed before a jury, such consent is not given. This may be considered as a consent in writing of affiant to have the action tried before another judge in case of waiver of jury or change of plea to Guilty, but not as an admission of disqualification."

The portions of section 170 of the Code of Civil Procedure pertaining to this proceeding provide:

"No justice, judge or justice of the peace shall sit or act as such in any action or proceeding: . . .

"5. [Bias or prejudice.] When it is made to appear probable that, by reason of bias or prejudice of such justice, judge or justice of the peace a fair and impartial trial can not be had before him. . . ."

Additionally, section 170.5 of the same code sets forth in detail the manner in which a peremptory challenge of a judge may be filed and the manner in which the hearing thereof shall

proceed before another judge who must be assigned for the purpose either by the presiding judge of the county or if there is no presiding judge then by the Chairman of the Judicial Council.

From a reading of the two sections above cited it is readily apparent that the Legislature has determined that when it appears *probable* from a proper challenge that by reason of bias or prejudice of a judge, before whom the matter is pending, a fair and impartial trial cannot be had, without further proof or act another judge shall be assigned to hear the challenge. Stated otherwise, when sufficient facts appear from the affidavit of bias the challenged judge is precluded from passing upon the question of his alleged bias or prejudice. That this is a proper interpretation of the statutes in question is self-evident, since if this were not true and the judge so challenged were allowed to conclusively determine his own state of mind the efficacy of the section (170.5) as written would be defeated. (*Briggs* v. *Superior Court,* 215 Cal. 336 [10 P.2d 53]; *Kreling* v. *Superior Court,* 63 Cal.App.2d 353 [146 P.2d 935].)

Although we are impressed as are counsel by the evident sincerity of Judge Ross in his endeavor to appraise his situation as posed by the allegations of the defendants, nevertheless we must follow the well established rule and look—not to what he may have thought or what his state of mind may have been at the time he made the challenged statements, but rather we must look to what he said or did. (*Briggs* v. *Superior Court, supra*; *Kreling* v. *Superior Court, supra.*)

Turning to the record we find no conflict between the allegations of defendants as to what Judge Ross said and his affidavit in opposition thereto. Admittedly he made the statements as disclosed by the transcript, and although he denied bias or prejudice in so stating such denial did not create a conflict in the evidence. (*Briggs* v. *Superior Court, supra*; *Kreling* v. *Superior Court, supra.*) Thus the question for decision is whether or not the determination of Judge Steel that Judge Ross was not disqualified is a question of fact supported by the evidence and hence binding upon this court (*Briggs* v. *Superior Court, supra*) or purely a question of law properly determinable by this court.

While we have no more desire than did the Supreme or District Court in the cases cited above to be understood as holding that the affidavit of a challenged judge may not under any circumstance be considered by the judge assigned to pass

upon the issue of bias or prejudice, however, here, as in those cases, by reason of the undisputed remarks of the challenged judge we must conclude as did the reviewing courts therein, that as a matter of law Judge Ross is disqualified. Here, Judge Ross, after discussing his views as to court and jury trials generally, clearly stated that if he were conducting a trial without a jury "then perhaps the things stated by the defense would constitute a disqualification." Necessarily, therefore, where, as here, the facts alleged in support of the challenge are not denied but only the bias or prejudice alleged the question presented is solely one of law and properly determinable by this court in this proceeding. (*Briggs* v. *Superior Court, supra,* p. 342; *Kreling* v. *Superior Court, supra,* p. 362.)

We cannot agree with the argument of respondent that while such statements might disqualify a judge to conduct a trial when sitting without a jury, the same statements would not disqualify him to conduct a jury trial. Section 170 of the Code of Civil Procedure makes no such distinction and we can conceive of none. If there can be no such distinction it necessarily follows that the fundamental right of every litigant to a fair and impartial trial applies with equal solemnity to a court trial as to a trial before a jury.

The disqualification of a judge should not be taken lightly nor should it be the result of frivolous allegations or conclusions. But certainly no less serious is the crime for which the defendants are charged and for which they may pay the supreme penalty. Because of these very evident factors we are persuaded that it would neither be fair to the defendants nor to Judge Ross for him to preside at their trial.

By reason of the conclusions we have reached herein it becomes unnecessary to consider the petitioners' remaining contentions.

Let the writ issue.