[Crim. No. 6295. In Bank. Dec. 23, 1958.]

In re MAX OSSLO and ARTHUR L. MEYER, on Habeas Corpus.

Charles P. Scully and Thomas Whelan for Petitioners.

Edmund G. Brown, Attorney General, William E. James, Assistant Attorney General, James Don Keller, District Attorney (San Diego) and Claude B. Brown, Deputy District Attorney, for Respondent.

SCHAUER, J.—By application for habeas corpus petitioners Osslo and Meyer ask that they be relieved of the assertedly illegal restraint of probation orders and that the superior court be required to revoke probation and to sentence petitioners.[1] The superior court determined that petitioners had "accepted probation" and that the court would not "release them from it." We have concluded that petitioners could disavow probation and demand sentence.

On August 9, 1956, a jury found petitioners guilty of conspiracy to commit assault and of assault by means likely to produce great bodily injury. As is recounted in *People* v. *Osslo* (1958), 50 Cal.2d 75 [323 P.2d 397], petitioners are butchers' union officials and the offenses were related to a jurisdictional dispute between petitioners' union and a clerks' union. The physical acts of violence constituting the assault were committed not in person by petitioners but by members of a sailors' union (a union not involved in the jurisdictional

[1]The petition for habeas corpus named as respondents the Superior Court of the State of California, in and for the County of San Diego, and the Honorable John A. Hewicker, judge of that court, as well as the sheriff of San Diego County. This court ordered that the sheriff show cause "why the relief prayed for in this [habeas corpus] proceeding should not be granted." Although the superior court and the judge thereof were not ordered to show cause, the "Return and Answer to Petition for Writ of Habeas Corpus" was filed on behalf of such court and judge as well as on behalf of the sheriff, and the traverse to the writ again names the three respondents. Therefore, references in this opinion to "respondents" are to the court and judge as well as the sheriff.

dispute) who had been hired by the butchers' union to aid it in that dispute. The condition of probation which resulted in the present controversy requires that petitioners give up their union offices.

On August 27, 1956, the trial court in passing upon petitioners' application for probation stated, ''Now, although I am going to grant these defendants probation, of course probation is a privilege and they are going to have to comply with it. If they don't like the terms, of course they don't have to accept probation. *When I get through here, I want you to tell me. You can confer with your clients and tell me whether you want to accept probation.''* (Italics added.) The trial court then stated the conditions upon which it proposed to grant probation. Neither petitioners nor their counsel said anything in open court as to acceptance or rejection of probation. Petitioners were placed in the custody of the sheriff.

As to each petitioner the probation orders of August 27, 1956, provided, among other things, as follows: that imposition of sentence was suspended for 10 years; that petitioner be confined (Osslo for six months, Meyer for three months) in a county adult detention facility; that petitioner pay a fine (Osslo $1,500, Meyer $750) from his own funds in monthly installments of $50, the first installment to become due within 60 days from petitioner's ''release from custody''; that petitioner annually, on or about December 31, file with the probation officer on a form approved by the court, an affidavit that the payments ''have come from his own funds and not from monies received or solicited from any Union or its members''; that ''during the period of his probation [petitioner] shall not hold any position . . . in, or receive any remuneration from, any union''; that ''effective such date as this judgment may become final, [petitioner] shall resign any [union] position''; and that ''this . . . Judge shall retain jurisdiction of this matter throughout the said period of probation and no other . . . Judge shall modify this order without notice to the Judge who tried the case.'' Petitioners at once appealed to the District Court of Appeal.

On August 29, 1956, there was filed in the suprior court a form of affidavit and an order of the trial judge that during probation the probationers shall sign such an affidavit ''during . . . January of each year, or more often, if requested.'' This form of affidavit states, among other things, that affiant has received no funds from any union or union member for the purpose of paying his fine, and ''That in accordance with the

terms of probation, affiant has held no . . . office in any . . . Union since September 1, 1956, and that all offices held prior to said date by affiant have been terminated by resignation.''

On September 13, 1956, this court on an application for habeas corpus ordered petitioners' release on bail. On their appeal in the District Court of Appeal (*People* v. *Osslo* (1957, Cal.App.), 310 P.2d 1020, 1030-1031) and thereafter in this court (which granted a hearing after the decision on appeal by the District Court of Appeal) petitioners unsuccessfully urged that the trial court was without power to require, as a condition of probation, that they should not hold any union position or receive remuneration from any union. This court ordered that the provision of the probation orders by which the individual trial judge purported to retain jurisdiction of the cause be stricken; in all other respects the orders were affirmed. (*People* v. *Osslo* (1958), *supra*, 50 Cal.2d 75, 102-104 [29-32], 106; rehearing denied.)

Petitioners sought certiorari in the United States Supreme Court. On April 28, 1958, this court denied their application for stay of execution of judgment pending the application for certiorari. On April 29, Mr. Justice Douglas of the United States Supreme Court granted bail. On June 9, 1958, the federal Supreme Court denied certiorari and terminated petitioners' release on bail as of June 23, 1958.

On June 18, 1958, petitioners gave notice that on June 23 they would move the trial court for an order ''modifying the judgment . . . and modifying the Order admitting [petitioners] to probation.''

On June 23, 1958, petitioners for the first time expressed to the trial court their desire to reject probation. They moved for sentence as misdemeanants[2] and urged that ''imposition of a substantial fine would serve the interests of justice.'' When this motion was denied, petitioners explained that they believed that ''honor requires that [they] not give up [their] right to employment by a union,'' and moved that the court ''withdraw the order for probation, and if . . . sentence cannot be made a misdemeanor that . . . your Honor pronounce judgment.'' The court denied this motion and the further motion for modification of the conditions of probation to permit union employment.

The trial court based its denial of petitioners' motions upon

---

[2]The offenses of which petitioners were convicted are punishable either as misdemeanors or as felonies. (Pen. Code, §§ 17, 182, 245.)

the following stated grounds: "I can't in good conscience make it a misdemeanor" because codefendants of petitioners (the members of the sailors' union employed by petitioners) had been sentenced to state prison and were serving their sentences. "Levying a fine in a case of this kind is useless" because the fine would be paid by assessment of union members. "I think it is going to be conducive to peace in the labor movement if these officials have to control their actions to such an extent that they don't become involved with the Penal Code . . . They are responsible to the criminal courts and . . . if they know it and it is certain if they are convicted they won't be turned loose and have the matter made a misdemeanor, I think we will have peace in the labor movement." If petitioners "didn't want to accept" probation when the probation orders were made, they "should have told me so and I would have sentenced [them] at that time. So they have accepted probation . . . [for the 22 months which had elapsed since the making of the probation orders] and I am not going to release them from it." Petitioners were remanded to the custody of the sheriff.[3]

Habeas corpus is a proper remedy to effect the relief sought by petitioners; i.e., release from the restraint of the probation orders and remand of petitioners to the superior court for sentence. (Pen. Code, § 1484 [on habeas corpus the court must dispose of petitioner "as the justice of the case may require"]; Pen. Code, § 1493 ["In cases where any party is held under illegal restraint or custody, or any other person is entitled to the restraint or custody of such party, the judge or court may order such party to be committed to the restraint or custody of such person as is by law entitled thereto"]; *In re Stoliker* (1957), 49 Cal.2d 75, 78 [3] [315 P.2d 12]; *In re Bartges* (1955), 44 Cal.2d 241, 247-248 [5-7] [282 P.2d 47]; *In re McCoy* (1948), 32 Cal.2d 73, 76-77 [4] [194 P.2d 531].)[4]

Respondents point out that petitioners have appealed to the District Court of Appeal from the order of June 23, 1958, and urge that appeal is the proper remedy. The order is probably appealable as an order made after judgment affecting the substantial rights of petitioners. (See *In re*

---

[3]On August 6, 1958, this court ordered petitioners released on bail pending final determination of this habeas corpus proceeding.

[4]Despite petitioners' release on bail, habeas corpus will lie to test the legality of their constructive restraint. (*In re Petersen* (1958), *ante*, p. 177 [331 P.2d 24].)

*Bine* (1957), 47 Cal.2d 814, 817 [6] [306 P.2d 445].) However, since the question of the appealability of such an order has never been decided, since the order to show cause has issued in this proceeding, and since petitioners have a vital interest in having sentence imposed as soon as possible, we shall in this proceeding consider petitioners' right to refuse probation.

The appellate courts of this state have had occasion repeatedly to emphasize that a defendant has no right to be granted probation; probation is a privilege, an act of grace or clemency. (E.g., *In re Davis* (1951), 37 Cal.2d 872, 874 [236 P.2d 579]; *In re Trombley* (1948), 31 Cal.2d 801, 811 [9] [193 P.2d 734]; cases collected in West's Ann. Pen. Code (1956), § 1203, note 3, pp. 310-311, § 1203.1, note 3, p. 337.)

It now becomes necessary to emphasize that a defendant has the right to refuse probation, a right of which he cannot lightly be deprived.

The trial court apparently was of the opinion that petitioners' right to reject probation was affected by their failure to seek a stay of execution of the probation orders pending the appeal, for the trial court at the hearing of June 23, 1958, inquired why petitioners "didn't ask for a stay of the probation proceedings so that they wouldn't be governed by the probation orders while the case was up on appeal."[5]

We cannot agree that petitioners' failure to request a stay of execution of the probation orders evidenced an irrevocable acceptance of the conditions of those orders. Petitioners' failure to seek a stay of execution was based on their mistaken belief that their appeal and release on bail effected a stay[6]

[5]In this connection we note that the trial court is correct in its view that the petitioners did not request a stay of execution. Although in this proceeding counsel for both petitioners and respondents aver that petitioners applied for and the trial court denied a stay of execution, the record on appeal from the probation orders shows only that the trial court denied a stay of execution as to the sailor defendants and that appended to Meyer's notice of appeal is a blank form of order staying execution; it does not show the making in or denial by the trial court of a motion for stay of execution pending appeal as to Osslo and Meyer.

Petitioners do not suggest that they sought a stay of execution in the District Court of Appeal, and they did not seek such a stay in this court while their appeal was pending. Although petitioners in this proceeding allege and respondents do not deny that Justice Douglas of the United States Supreme Court ordered a "stay of execution of judgment," it appears that Justice Douglas ordered only that petitioners be temporarily released on bail (see 357 U.S. 907 [78 S.Ct. 1152, 2 L.Ed.2d 1157]).

[6]The trial court is correct in its view that petitioners at all times since the making of the probation orders have been subject to probation. At the time petitioners appealed, section 1243 of the Penal Code provided

and, therefore, such failure did not indicate acquiescence in the terms of probation.

Petitioners take the view that they evidenced rejection of probation by resuming their activity in their union offices immediately upon their release on bail (on September 13, 1956) and by failing, while their appeals were pending, to file either the affidavits referred to in the original probation orders or the somewhat different affidavits set out in the order of August 29, 1956. It appears proper to point out that we do not base our decision that petitioners have the right to disavow probation upon this consideration.

The original probation orders provide both that petitioners shall hold no union office "during the period of probation" (i.e., beginning with the entry of the probation orders on August 27, 1956) and that petitioners shall resign their union positions "effective such date as this judgment may become final." ▮ Since the probation orders of August 27 are to be construed favorable to petitioners (*In re Bramble* (1947), 31 Cal.2d 43, 51 [6, 7] [187 P.2d 411]), the provision that they resign their union offices "effective such date as this judgment may become final" (that is, when affirmance on appeal became final; see *Pacific Gas & Elec. Co.* v. *Nakano* (1939), 12 Cal.2d 711, 714 [1] [87 P.2d 700, 121 A.L.R. 417] ; *Jennings* v. *Ward* (1931), 114 Cal.App. 536, 537 [1] [300 P. 129]) prevails over the provision that they hold no office during any part of the period of probation. Thus, petitioners' resumption of union activity on September 13, 1956, was not inconsistent with the original probation orders properly construed.

---

that "An appeal to the Supreme Court or to a district court of appeal from a judgment of conviction stays the execution of the judgment in all cases where sentence of death has been imposed, but does not stay the execution of the judgment in any other case unless the trial or appellate court shall so order." So far as the effect of appeal was concerned, an order granting probation was a "judgment" as to which execution was not stayed, for section 1237 of the Penal Code provided (as it now provides) that "An appeal may be taken by the defendant: 1. From a final judgment of conviction; an order granting probation shall be deemed to be a final judgment within the meaning of this section . . ."; thus a probation order was "deemed" a judgment so far as all the mechanics of appeal were concerned. (In 1957 section 1243 was amended to expressly provide that execution of an order granting probation is not stayed by appeal unless the trial or appellate court so orders.) Petitioners' release on bail while the appeal was pending did not suspend operation of the terms of probation other than the provisions for confinement. (*People* v. *Jennings* (1954), 129 Cal.App.2d 120, 122 [2] [276 P.2d 124]; cf. *In re Davis* (1957), 150 Cal.App.2d 790, 791-792 [310 P.2d 1031], where the trial court, when it granted probation, stayed "the judgment and proceedings" pending appeal.)

■ The original probation orders of August 27 further provide that each petitioner shall file annually ''an affidavit that said payments on said fines have come from his own funds and not from [union] monies.'' Under the terms of probation, the first installment of the fines did not become due until 60 days after petitioners' ''release from custody,'' that is, until they had remained in custody for the periods prescribed by the probation orders. Petitioners have been free on bail during most of the time since the entry of the probation orders; they have not served their probationary terms of custody; and therefore the installments of their probationary fines have not become due. Thus there has been no occasion for them to file the affidavits referred to in the original probation orders and their failure to do so does not evidence rejection of probation.

The terms of the form of affidavit prescribed by the order of August 29, 1956, differ somewhat from those specified in the original probation orders. The August 29 form of affidavit states, among other things, that ''affiant has held no . . . office in any . . . Union since September 1, 1956.'' This later order does not expressly state that it is intended to modify the previously declared terms of probation, but if it is valid such would be its effect. We need not now decide whether the trial court's statutory power to modify the conditions of or revoke probation ''at any time during the term of probation'' (Pen. Code, § 1203.3) can be exercised while an appeal from the probation order is pending and, if so, to define its extent. But inasmuch as both the trial court and the petitioners indicate views on the subject which should not be understood to have our approval, and as petitioners must be remanded to the superior court for further proceedings, some discussion of the matter is desirable. (See Code Civ. Proc., § 53.)

The trial court here apparently assumed (since it made the order of August 29, 1956) that it could modify (or clarify) the terms of probation while an appeal was pending, but it also indicated the view that it could not revoke probation while an appeal was pending.[7] ■ It is, of course, the general rule that ''Pending the appeal the superior court has no jurisdiction to vacate the judgment or make any order af-

---

[7]The trial court when it made the probation orders stated, ''if an appeal is taken and the case is reversed on appeal, if the union wishes to keep you on as an officer, I can't do anything about it, because the minute you file the notice of appeal, I lose jurisdiction on it.'' Again at the hearing of June 23, 1958, the trial court expressed the view that ''you can't touch them when they are up on appeal.''

fecting it.'' (*In re Johannes* (1931), 213 Cal. 125, 130 [1 P.2d 984] [a case not involving an order granting probation].)

It is also true that ''within the meaning'' of section 1237 of the Penal Code (which specifies the judgments and orders from which a defendant may appeal) an order granting probation is ''deemed to be a final judgment.'' But it could well be argued that deeming an order granting probation to be a final judgment within the meaning of section 1237 (i.e., making it an appealable order and making the scope of review the same as though the appeal were taken from a final judgment of conviction) does not preclude any court from recognizing that for purposes other than those of section 1237 there is a substantial and here pertinent difference between an order granting probation and a final judgment as such.

The final judgment and commitment place the defendant in the custody of the warden or penal authority and remove him from the jurisdiction of the trial court. But probation essentially calls for continuing supervision of the probationer and maintaining jurisdiction and power in the trial court to act in respect to such supervision. For example, section 1203.3 of the Penal Code provides that ''The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence.'' Section 1203.2 declares that ''At any time during the probationary period . . . any probation or peace officer may without warrant, or other process, . . . rearrest any person so placed on probation . . . and bring him before the court . . . and [the court] may thereupon revoke and terminate such probation, if the interests of justice so require . . .'' Further indicating a legislative plan that the trial court shall have continuing jurisdiction over a probationer, section 1203.2a expressly provides that ''If any defendant who has been released on probation is committed to a prison in this State for another offense, the court which released him on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed,'' etc.

From what has been said it would appear to follow that while an appeal from a probation order is pending the trial court, if execution of the probation order is not suspended, should have power to require supervision of the probationer, and to punish violation of the conditions of probation by modification of those conditions or revocation of probation. Further support is given this view by the 1957 amendment of section 1243 of the Penal Code to expressly

provide that an appeal does not stay execution of an order granting probation unless the trial or appellate court so orders.
Certainly the mere taking and pressing of an appeal from an order granting probation, and seeking reversal of the conviction or a declaration that any of the conditions of probation are invalid, should not, merely as such, constitute a ground for revocation or modification of probation. It could also be argued that a trial court should not, while an appeal is pending, make any change in the original conditions of probation other than such as might become necessary or expedient by reason of some act or default of the defendant or some event or circumstance not connected with the appeal from the order. In this case, as hereinabove indicated, we do not need to pass upon the extent of the trial court's jurisdiction over the probationers or the terms of their probation while their appeal was pending, but we expressly do not accept as correct or as controlling in this proceeding either petitioners' assumption that they violated probation pending appeal or the trial court's assumptions that it could modify but could not revoke probation pending appeal.

The statutes concerning probation contain no provision as to its acceptance or rejection. However, it is settled that a defendant has the right to refuse probation, for its conditions may appear to defendant more onerous than the sentence which might be imposed. (*People* v. *Osslo* (1958), *supra*, 50 Cal.2d 75, 103 [30]; *In re Hays* (1953), 120 Cal. App.2d 308, 310 [4] [260 P.2d 1030]; *People* v. *Frank* (1949), 94 Cal.App.2d 740, 742 [211 P.2d 350]; *Lee* v. *Superior Court* (1949), 89 Cal.App.2d 716, 717 [1] [201 P.2d 882]; *People* v. *Blankenship* (1936), 16 Cal.App.2d 606, 610 [61 P.2d 352]; *People* v. *Billingsley* (1943), 59 Cal.App.2d Supp. 845, 849 [3] [139 P.2d 362].)[8]

It is unnecessary to determine in this case whether a defendant might in some circumstances so manifest "acceptance" of probation as to lose his right to disavow that privilege with the concomitant burdens of its conditions, and thus be placed in the position of being required to intentionally violate probation in order to obtain its revocation and the imposition of sentence. In any event these petitioners did not so

---

[8]In the light of the cited cases, it must be considered that it is no longer the law that, as held in the case of *In re De Voe* (1931), 114 Cal.App. 730, 736 [3, 4] [300 P. 874], a defendant who has applied for probation has no right, before his application is acted upon, to withdraw such application and to be sentenced.

manifest "acceptance." Rather, their conduct has been inconsistent with acceptance of the terms of probation. They immediately appealed from the probation orders. They obtained release on bail by order of this court. Upon appeal and then by application for certiorari they attacked the terms of probation as unreasonable and beyond the power of the trial court. Promptly after denial of certiorari they asserted in the trial court their right to reject probation.

It is true that petitioners did not comply with the trial court's direction, when it announced the conditions on which it proposed to grant probation, that they "tell me whether you want to accept probation." But whatever may be within the trial court's permissible scope of conditions for *granting* probation it could not make petitioners' right to *reject* the offered probation conditional upon their immediate announcement of rejection. If petitioners, as soon as the trial court announced the terms upon which it would grant probation, had rejected such offer and demanded sentence, they could not have pressed their contention that the trial court was without power, as a condition of probation, to require them to give up for 10 years the union activity which they had chosen as their life's work. Although this contention was legally untenable it was not frivolous. The trial court, in effect, would require petitioners to "accept" the conditions of probation in order to question their legality in the appellate courts.

In *People* v. *Billingsley* (1943), *supra,* 59 Cal.App.2d Supp. 845, 850 [6], it is said that "Doubtless election to serve the sentence rather than accept probation must be timely made or probation will be deemed to have been accepted." We do not now decide whether a defendant might in some circumstances lose his right to disavow probation by failure to make "timely" manifestation of "election to serve the sentence rather than accept probation." In the circumstances of this case petitioners' assertion of that right, made promptly upon the unsuccessful termination (as to all but one provision) of their attacks on the terms of probation by appeal and application for certiorari, was timely.

Petitioners seek to raise the question of the trial judge's bias and prejudice. Without suggesting that they have alleged facts showing bias and prejudice, we decline to pass upon the question because it does not appear to have been raised in the superior court (under Code Civ. Proc., § 170).

For the reasons above stated the petition for habeas corpus

is granted and the petitioners are remanded to the custody of the sheriff of San Diego County to be brought before the superior court of that county for proceedings not inconsistent with this opinion. Upon production of petitioners in the superior court as above ordered, that court as to each petitioner, unless it shall decide to admit him to probation upon conditions acceptable to him, shall revoke and terminate probation, arraign him for judgment and (in the absence of legal cause shown) sentence him to such penalty or penalties within the law as such court in its discretion, in the light of all the relevant circumstances, may determine to be appropriate.

Gibson, C. J., Shenk, J., Traynor, J., Spence, J., and McComb, J., concurred.

CARTER, J.—Concurring and Dissenting.—I agree with the majority that petitioners must be released from the illegal restraint imposed by the terms of their probation, but the opinion falls far short of granting the relief to which petitioners are entitled, by permitting the trial court to now impose sentence on them. Considering the additional facts revealed at the hearing of petitioners' motions to reject probation, this court has no alternative but to release petitioners from any further restraint, on the ground that they were denied a fair trial in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

Denial of a fair and impartial trial in a criminal case, whether the crime charged is a felony or misdemeanor, constitutes a denial of due process of law and is in violation of the Fourteenth Amendment as well as article I, section 13, of the Constitution of California. (*Moore* v. *Dempsey,* 261 U.S. 86, 91 [43 S.Ct. 265, 67 L.Ed. 543]; *Chambers* v. *Florida,* 309 U.S. 227, 238 [60 S.Ct. 472, 84 L.Ed. 716]; *Adamson* v. *California,* 332 U.S. 46, 53 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223]; see, *In re Wells,* 35 Cal.2d 889 [221 P.2d 947]; *In re James,* 38 Cal.2d 302 [240 P.2d 596].) "A fair trial means a trial before an impartial judge, an honest jury and in an atmosphere of judicial calm." (14 Am.Jur., Crim. Law, § 130; *McKay* v. *Superior Court,* 98 Cal.App.2d 770 [220 P.2d 945].) Where bias and prejudice at the trial on the part of the trial judge is established, then there has been a denial of due process. (See, *Kreling* v. *Superior Court,* 25 Cal.2d 305 [153 P.2d 734]; *In re Jacobson's Guardianship,* 30 Cal.2d

312 [182 P.2d 537]; *People* v. *Spear,* 32 Cal.App.2d 165, 171-172 [89 P.2d 445]; *In re Steiner,* 134 Cal.App.2d 391, 395-396 [285 P.2d 972]; see, also, Code Civ. Proc., § 170 et seq.)

The degree of bias and prejudice which disqualifies a trial judge is more than a nebulous belief that the judge had some preconceived ideas about a piece of litigation; it is personal bias and prejudice or a bent or leaning either for or against the litigant, which, regardless of the merits of the cause, makes it impossible for the judge to view the case dispassionately. It is a state of mind calculated to impair impartiality and to sway judgment. (*Estate of Friedman,* 171 Cal. 431 [153 P. 918]; *McEwen* v. *Occidental Life Ins. Co.,* 172 Cal. 6 [155 P. 86]; *Evans* v. *Superior Court,* 107 Cal.App. 372 [290 P. 662]; *McKay* v. *Superior Court, supra.*) Moreover, the bias or prejudice must be against the complaining party. (*People* v. *Sweet,* 19 Cal.App.2d 392, 396 [65 P.2d 899]; *Woolley* v. *Superior Court,* 19 Cal.App.2d 611, 626-627 [66 P.2d 680]; *People* v. *McCullough,* 100 Cal.App.2d 101, 110-111 [223 P.2d 37].)

It is well settled that expressions of opinion uttered by a judge, in what he conceives to be a discharge of his official duties, are not evidence of bias or prejudice. (*Estate of Friedman, supra,* 171 Cal. at 440; *McEwen* v. *Occidental Life Ins. Co., supra,* 172 Cal. at 11; *Fishbaugh* v. *Fishbaugh,* 15 Cal.2d 445, 456 [101 P.2d 1084]; *Kreling* v. *Superior Court, supra,* 25 Cal.2d at 310-311.) Nor does marked disapproval by the judge of unlawful misconduct, disclosed by evidence, amount to a manifest prejudice by the trial judge. (*In re Steiner, supra,* 134 Cal.App.2d at 391.)

As qualified by these principles the criterion for determining bias and prejudice is what the trial judge said or did. (*McKay* v. *Superior Court,* 98 Cal.App.2d 770 [220 P.2d 945].) The allegations showing prejudice must give fair support to the charge of a bent of mind that has prevented or impeded impartiality of judgment and assert facts with particularity from which a reasonable mind might fairly infer bias or prejudice. (*Wilkes* v. *United States,* 80 F.2d 285, 288-289.)

It is clear that the facts contained in the present affidavit are sufficient to show such bias and prejudice. Although it is unnecessary to refer in detail to the errors that occurred during the trial of petitioners as pointed out in my dissenting opinion (*People* v. *Osslo,* 50 Cal.2d 75, 106), a brief summary of them is required to set the stage for what was to follow. It is sufficient to say that the main thrust of the trial

court's errors was manifested in the prosecutor's efforts to inflame the passions of the jury by portraying petitioners as characters harmful to society because they were members and officials of a labor union. The prosecution lacked facts to prove its case of conspiracy, and so resorted to non-legal methods of proof. For the most part the prosecutor was successful, despite vigorous objections by defense counsel. Thus by substituting the labor union movement as defendant and placing it on trial, the prosecutor obtained a conspiracy conviction on the basis of guilt by association.

At the time the appeal of the case was considered on its merits all that could be inferred from the trial judge's rulings, which permitted these tactics, was that they were erroneous. As serious and as prejudicial as I felt these errors were, and still do, our conclusion did not go beyond the observation that the trial judge misapprehended the law. The majority admitted there was error, but held that it was not prejudicial. However, even the majority found unpalatable the trial judge's astonishing provision that he retain exclusive jurisdiction of petitioners during their probation, and this term was stricken from the judgment by the decision of this court (50 Cal.2d 75). This provision was a portent of the trial judge's position which was to be made known subsequently. The factual circumstances remained unchanged until the instant proceedings were commenced.

At the hearing on petitioners' motions to reject probation, the trial judge made the following revealing remarks as quoted in the majority opinion: " 'Levying a fine in a case of this kind is useless' because the fine would be paid by assessment of union members. 'I think it is going to be conducive to peace in the labor movement if these officials have to control their actions to such an extent that they don't become involved with the Penal Code. . . . They are responsible to the criminal courts and . . . if they know it and it is certain if they are convicted they won't be turned loose and have the matter made a misdemeanor, I think we will have peace in the labor movement.' "

In considering these comments it will be remembered that petitioners were supposedly being tried for a conspiracy to commit a misdemeanor, and not for disrupting the peace in the labor movement. Moreover, as was stated in my dissent, there was not one shred of evidence indicating that petitioners, in their capacity as union officials, or otherwise, demonstrated

disrespect for the law. (*People* v. *Osslo, supra,* 50 Cal.2d at 120-122.)

Only one conclusion can be drawn from the trial judge's preoccupation with petitioners' union membership. His obvious antipathy to the labor movement and union members in particular, as reflected in his rulings at the trial level, and fully demonstrated by his remarks at the hearing of the motions to reject probation, prevented the exercise of his impartial judgment. He attempted to clasp petitioners within the ambit of his jurisdiction for 10 years to preclude their participation in any labor union activity whatsoever. His punishment was not aimed at the individual petitioners but at labor union members as a whole for the sole purpose of controlling their actions. Again I repeat, neither labor unions nor the labor movement was on trial. But the statements by the trial judge, referring to these elements, coupled with his efforts to punish them, point to a preexisting bias and prejudice which disqualified the trial judge and rendered the trial before him violative of due process of law.

Habeas corpus is an available remedy where a defendant is denied due process of law at his trial, provided there is no other adequate remedy. (*In re Wallace,* 24 Cal.2d 933, 938 [152 P.2d 1]; *In re McCoy,* 32 Cal.2d 73, 76 [194 P.2d 531].) Where, however, the facts on which the petition for habeas corpus is based, arise or come to light subsequent to the appeal, the existence of a prior appeal will not deter us from granting relief clearly called for. (*Chessman* v. *Teets,* 354 U.S. 156, 161-162, 164-165 [77 S.Ct. 1127, 1 L.Ed.2d 1253].)

Such is the situation in the case at bar. The most convincing statements demonstrating prejudice and bias by the trial judge did not occur until the hearings on the motions to reject probation, a time after the appellate processes had been exhausted.

Nor does the fact that petitioners have not specifically requested this relief militate against granting appropriate relief. "The proponent before the Court is not petitioner but the Constitution of the United States." (*Chessman* v. *Teets, supra,* 354 U.S. at 165.) Where the facts warrant relief, as abundantly appears herein, the court, as justice requires (Pen. Code, § 1484), and as vindication of the constitutional guarantee of due process of law, must grant relief. No clearer case for the application of this rule can be found.

This case presents a sorry picture of justice in this state. It is obvious to my mind that if these petitioners had not been

engaged in union labor activity, they would not have been prosecuted. There is not one word of evidence in the record connecting them with any crime whatsover. Their only crime is being a member of a labor union. Such membership was believed by some to be unpopular in San Diego County and even in California before the last election. The atmosphere during the trial was surcharged with prejudice against the defendants because they were engaged in labor union activity. The trial judge did not become prejudiced solely on the probation issue. The record shows that he cooperated with the prosecutor to prejudice the defendants in the eyes of the jury and that the guilty verdict was the result of such prejudice. This result is too obvious to escape the careful scrutiny of the members of this court. The only question is, will it be tolerated? This question must be answered by the individual members of the court.

I have always believed that considerations of justice should rise above prejudice and that persons charged with crime should be judged on the basis of proven guilt, regardless of race, color, creed or occupation. I am convinced beyond doubt that if such rule were applied here, these petitioners would be completely exonerated and discharged from custody.

For the foregoing reasons petitioners should be discharged from custody.