THE PEOPLE OF THE TERRITORY OF GUAM, Plaintiff

v.

GREGORY ROSS DALLY, Defendant

Criminal No. 56F-75

THE PEOPLE OF THE TERRITORY OF GUAM, Plaintiff

v.

RICHARD J. LANDGRAF, Defendant

Criminal No. 59F-75

Superior Court of Guam

May 27, 1975

ABBATE, *Judge*

## DECISION

I have carefully reviewed the objections and statements submitted by defendants Dally and Landgraf requesting that I disqualify myself for reasons of bias and prejudice. These documents include assertions that "by reason of bias and prejudice of the Honorable Paul J. Abbate, a fair and impartial trial cannot be had before him." Annexed to these documents are "Exhibit A's, which are copies of indictments of a one Frank Rodney Reyes and a one Gordon Steve Clay charging same with the murders of Gregory Valer Abbate, Jan Marie Faria, and Mary Louise Farrell. Included in the document is the notation that "Gregory Valer Abbate is the son of the Honorable Paul J. Abbate."

There was presented no evidence nor was any allegation made that defendants Dally and Landgraf bear any relationship with those defendants whose names appear in the attached indictments. Further, there was presented no evidence nor were any allegations made that I have had any direct or remote relationship with defendants Dally and Landgraf.

On first impression, I am at a loss to understand upon what legal theory these requests for disqualification are supported by the annexed exhibits. Therefore, having failed to receive same, I have been compelled to attempt to extrapolate from these disparate elements the legal theory upon which defendants Dally and Landgraf rest their requests, in order that I might intelligently and judiciously respond.

Apparently, it is their theory that the experiencing of this personal tragedy by myself has resulted in a warping of my judicial faculties. More specifically, it would appear that defendants Dally and Landgraf are alleging that this

event has heightened my abhorrence to crime to such an extent as to blur my judicial vision, thereby preventing me from viewing them (or, for that matter, any defendants) as other than as a guilty party.

After examining the decisional law relative to the issues raised by both the facts presented, and the theory I was forced to impose upon same, I cannot but conclude that this request fails for the most fundamental of reasons. Simply stated, it fails to present any evidence or make any allegation of facts which relate defendants Dally and Landgraf to myself.

In 1937, the Supreme Court of California in *People v. Swett*, 65 P.2d 899, while reviewing a petition pursuant to § 170 (4) of the California Code (essentially the same as Guam Code § 170 (4) ), enunciated for the first time that an essential element of any claim under this section need be a showing of facts which give rise to a probable inference of bias or prejudice against the *specific* moving litigant. At page 901 of that decision, the court stated ". . . furthermore it is well established that before bias or prejudice can disqualify a judge it must be shown to exist against the particular party moving for the substitution of the judge." It is worth noting that the factual setting of that decision is rather analogous to the present, inasmuch as the bias or prejudice, which was alleged, was claimed to have arisen from the Judge's prior status as Attorney General. The allegation being that that former status made him biased against all criminal defendants.

The principle of law established in *Swett* has been affirmed on numerous occasions, however, perhaps never as succinctly as *In re Osslo*, 334 P.2d 1, where at page 10 the court opined.

The degree of bias and prejudice which disqualifies a trial judge is more than a nebulous belief that the judge had some preconceived ideas about a piece of litigation, it is personal bias and

prejudice or a bent or leaning for or against the litigant, which regardless of the merits of the cause, makes it impossible for the judge to view the case dispassionately.

And as recently as 1974, this substantive issue of law has been upheld by the Oregon Supreme Court in *Brauhn v. Brauhn*, 518 P.2d 1089 where the court states at p. 1093:

It is often held that to disqualify a judge from sitting, it is not enough that the claimed bias be with respect to the subject matter of the law suit; it must be with respect to the person of the party litigant.

With respect to the extrapolated theory that abhorrence to crime may give rise to grounds for disqualification, I would like to address counsel's attention to the language in *Crawford v. Ferguson*, 115 P.278 at 282 which I look upon favorably as a sound piece of both judicial and social sense.

[6] There is a great and manifest difference between prejudice against a crime and being prejudiced against a person who may be charged with the commission of such crime. Every good citizen is prejudiced against the commission of crime. If being prejudiced against the commission of crime is a disqualification, then the members of this court are disqualified to decide any case pending before them. ....

■■ With respect to the authority of *In re Murchison*, 349 U.S. 133 which defense counsel offers as support for his position, I cannot but ironically note that if anything this case supports the overwhelming weight of authority which I believe this decision to be in accord with. Specifically, *In re Murchison* reasserts rather forcefully the principle that if there are facts which relate the judge with the defendant, which may give rise to bias or prejudice, then a disqualification is required to satisfy the dictates of due process. In this instance, no such facts were submitted or alleged.

In addition to examining the legal precedents surrounding this issue, I have as well examined the factual record to

determine if there perhaps could be found there any substantiation to the theory I was compelled to extrapolate from the documents submitted. In essence, I examined the cases heard before me during the 10 months prior to July 21, 1974; and the cases heard during the 10 months subsequent thereto. Specifically, I examined the verdicts rendered in all those cases. The raw data is as follows:

1. # cases heard prior to July 21: 17
   - (a) # guilty verdicts     : 7
   - (b) # not guilty verdicts   : 10
   - non-conviction rate       : 58%

2. # cases heard subsequent to July 21             : 15
   - (a) # guilty verdicts     : 4
   - (b) # not guilty          : 11
   - non-conviction rate       : 73%

From a most cursory analysis of these figures, it is strikingly apparent that: I. I have not been critically biased or prejudiced towards all criminal defendants whose trials have been heard before me, inasmuch as 11 of those defendants appearing before me since July 21 have been found not guilty. II. A more careful analysis of these records in fact reveals that the conviction and non-conviction rate of criminal defendants heard before me in the respective time periods are essentially identical. Actually, the non-conviction rate in the subsequent time period is greater than the prior period (prior 58%; subsequent 73%):

This empirical analysis perhaps best answers the question of whether I have become irreparably biased or prejudiced against all criminal defendants. The answer inescapably is an emphatic NO!

■■■■ I have taken great pains to research and write this decision. I have done so for three reasons. First, because I have received this request in essentially this identical form on numerous occasions. Second, because I wish this to be the definitive opinion on this issue and therefore, dispositive of these numerous requests. And third, because I wish, in addition, to identify myself with that line of cases which have held unanimously that where a judge determines a request of this nature to be "frivolous" or a "sham" it may strike same from the record and disregard it.[1] Therefore, the court wishes to allow this opinion to serve as adequate notice that requests of this nature are viewed as frivolous and as shams and I will not address myself to same in the future, but rather, disregard them and have them struck from the record.

---

[1] See *Neblett v. Pacific Mut. Life Ins. Co. of California*, 139 P.2d 934 (1943) ". . . Where the statement of disqualification is legally insufficient and is based on frivolous grounds, he may disregard it or strike it from the record." p. 938;

See also *People v. Sweeney*, 357 P.2d 1049 (1961); *In re Rodda's Estate*, 346 P.2d 441 (1959); *Calhoun v. Superior Court of San Diego County*, 331 P.2d 648 (1958); *Mackie v. Derr*, 316 P.2d 366 (1957).